737 So.2d 41 (1999)
Tyronne C. WILLIAMS
v.
RUSH MASONRY, INC.
No. 98-C-2271.
Supreme Court of Louisiana.
June 29, 1999.
*42 Sidney Daniel Meeks, Jimmy Arthur Castex, Jr., Reich, Meeks & Treadway, Metairie, Counsel for Applicant.
Joseph Paul Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, Counsel for Respondent.
LEMMON, Justice.[*]
In this workers' compensation action, the lower courts determined that plaintiff had injured his back while lifting materials on his employer's job site and had been disabled for approximately four months. We granted certiorari for the limited purpose of determining the correctness of the awards by the lower courts of penalties and attorney's fees based on the employer's discontinuance of benefits after three weekly compensation payments. Because we conclude that the employer was not arbitrary and capricious or without probable cause in discontinuing the payment of benefits, we reverse the awards of penalties and attorney's fees.

Facts
Plaintiff had worked for defendant as a laborer and mason tender for approximately four years before the incident at issue. Within minutes of reporting to work on the morning of June 12, 1996, plaintiff told his foreman that his back was hurting. The foreman suggested to plaintiff that drinking too many cold drinks sometimes causes back pain, but plaintiff did not at that time specifically mention that he had injured his back on the job that same morning. When the foreman offered plaintiff a back support belt, plaintiff said he was unable to continue working and went home. Plaintiff also was unable to work his second job in the dish room of a restaurant that evening.
The next day, plaintiff called the employer and asked for a physician referral, stating that he been hurt on the job the previous day.
On June 16, plaintiff consulted a physician, who wrote in his notes that plaintiff stated he injured himself at work while lifting heavy angle irons.[1] The initial medical examination revealed a soft-tissue injury, for which the doctor prescribed medication and physical therapy. The doctor further advised plaintiff not to work for the time being.
In late June, the employer paid plaintiff's medical bills and three weeks of workers' compensation benefits. On July *43 9, although plaintiff remained temporarily disabled,[2] the employer discontinued payment of benefits after concluding there was substantial doubt whether plaintiff sustained an on-the-job injury that caused the disability. This action by plaintiff followed, seeking reinstatement of payment of benefits and medical expenses, as well as penalties and attorney's fees.
At trial, the foreman and the supervisor on plaintiff's job testified, consistently with their statements taken on June 21 (nine days after the initial incident), that plaintiff did not lift any angle iron on the day of the incident. The foreman asserted that he and another employee moved the angle iron while plaintiff was standing behind them.
The workers' compensation judge, accepting plaintiff's testimony, found that plaintiff sustained a compensable injury on June 12, 1996 and was disabled from that date through September, 1996. Accordingly, the judge awarded temporary total disability benefits for that period, along with medical and travel expenses. Because of the employer's discontinuance of benefits and refusal to pay medical expenses while plaintiff was "still disabled," the judge also awarded plaintiff statutory penalties, as well as attorney's fees of $8,450.
The court of appeal affirmed the award of benefits in an unpublished opinion, finding no manifest error in the workers' compensation judge's credibility determinations. The court also affirmed the awards of penalties and attorney's fees, but reduced the fee award from $8,450 to $5,625. The court of appeal then added $1,500 in attorney's fees for the appeal, as requested in plaintiff's answer to the employer's appeal.
This court granted certiorari solely to address the issue of penalties and attorney's fees.[3] 98-2271 (La.11/25/98), 729 So.2d 580.

Penalties and Attorney's Fees in Workers' Compensation Actions
This court in Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, traced the statutory and jurisprudential history of awards of penalties and attorney's fees in workers' compensation actions. The Brown case, however, involved awards of penalties and attorney's fees for the employer's and insurer's failure to commence payment of compensation benefits timely, while the present case (in which the employer is self-insured) involves the employer's discontinuance of benefits that were commenced timely. Accordingly, at the outset of the analysis in this case, we again review the legislative changes that led up to the distinction, as to penalties and attorney's fees, between timely commencement of payment of compensation benefits and timely payment of continuing benefits, on the one hand, and discontinuance of such payments, on the other hand.
Prior to 1983, awards of penalties and attorney's fees against employers in workers' compensation cases were governed by La.Rev.Stat. 23:1201.2, while such awards against insurers were governed by La.Rev. Stat. 22:658. In the extensive revisions of the Workers' Compensation Act in 1983, provisions for awarding penalties and attorney's fees against both employers and insurers were incorporated into the Act. See 14 H. Alston Johnson III, Louisiana Civil Law Treatise-Workers' Compensation § 389 (3d ed.1994).
*44 La.Rev.Stat. 23:1201, as amended in 1983, fixed the deadline for commencing payment of installment benefits for various categories of disabilities or for death.[4] Section 1201 further provided penalties, against either the employer or insurer who was at fault in causing the delay, for failure to commence payment of installments within the time period provided, unless the non-payment resulted from conditions over which the employer or insurer had no control or unless the employer or insurer reasonably controverted the employer's right to such benefits.
The 1983 revisions also amended La. Rev.Stat. 23:1201.2 to require an employer or insurer to pay the amount of any claim due under the Act within sixty days of written notice and to pay all reasonable attorney's fees for the prosecution and collection of such claim if the employer's or insurer's failure to pay timely was arbitrary, capricious or without probable cause. Section 1201.2, as amended in 1983, further provided that an employer or insurer who discontinues payment of claims "due and arising" under the Act shall be subject to payment of all reasonable attorney's fees for the prosecution and collection of such claims if the discontinuance was arbitrary, capricious or without probable cause.
Thus, as of 1983, Section 1201 set out several time periods within which an employer must commence payment of installment benefits or timely pay continuing benefits, but Section 1201.2 set a period of sixty days from the receipt of written notice for the employer to pay the amount of any claim due. Moreover, Section 1201 provided only for penalties in the event of a failure to timely commence or timely pay benefits, while Section 1201.2 provided only for attorney's fees in the event of a failure to timely pay any claim due or a discontinuance of payments.[5] Additionally, the standard for excusing penalties under Section 1201 when the employer or insurer failed to pay installment benefits within the applicable time period was the employer's or insurer's reasonably controverting the employee's right to such benefits (or a condition over which the employer or insurer had no control), while the standard for awarding attorney's fees under Section 1201.2 was the employer's or insurer's arbitrary or capricious failure to timely pay a claim due or an arbitrary or capricious discontinuance of payment of claims due.[6]
There were apparent inconsistencies between Section 1201 and 1201.2 in that Section 1201 addressed the timely commencement of payment and timely continued payment of installment benefits, while Section 1201.2 addressed both timely commencement of payment and discontinuance of payment of claims due; Sections 1201 and 1201.2 provided different time periods for commencing payment of benefits; and Section 1201 provided for penalties under one standard, while Section 1201.2 provided for attorney's fees under a differently worded standard.
A 1995 amendment to both statutes eliminated some of the inconsistencies. *45 La. Acts 1995, No. 1137. The amendment deleted from Section 1201.2 the requirement of payment of the amount of any claim due within sixty days of written notice and the provision authorizing an award of attorney's fees for arbitrary or capricious failure to make such payment. Since this 1995 amendment, Section 1201.2 now addresses solely the discontinuance of payment of claims, while Section 1201 now addresses solely the timeliness of commencement of benefit payments and timeliness of continued payments.
The 1995 amendment also added to Section 1201 the authorization, in addition to specified penalties, of reasonable attorney's fees for each disputed claim under "this Section," which sets the time periods for commencement or continuation of benefits.[7]
Since the 1995 amendment, Section 1201 now generally governs the time period for commencing payment of compensation benefits and the timeliness of payment of continued benefits, as well as the time period for paying medical benefits; Section 1201 now also authorizes the award of both penalties and attorney's fees if payment of compensation benefits is not commenced timely, if continued benefits are not paid timely, or if medical benefits are not paid timely, unless "the claim is reasonably controverted" (or the nonpayment results from conditions over which the employer and insurer have no control); and Section 1201.2 now governs the discontinuance of payment of claims due and arising under the Act,[8] with an award of attorney's fees authorized when the discontinuance is arbitrary, capricious or without probable cause, as well as penalties only against the insurer in limited situations.
In summary, both penalties and attorney's fees are now recoverable under Section 1201 F if the employer or insurer fails to commence payments of benefits timely or to pay continued installments timely (or to pay medical benefits timely) unless the claim is reasonably controverted. However, only attorney's fees generally are now recoverable under Section 1201.2 if the employer or insurer arbitrarily discontinues payment of benefits due.

Penalties and Attorney's Fees in this Case
In the present case, the self-insured employer commenced paying compensation and medical benefits, apparently in good faith,[9] soon after plaintiff notified the employer he had injured his back on the job. Thus benefits were commenced timely as required by La.Rev.Stat. 23:1201 B, and the only statute at issue in this case is La.Rev.Stat. 23:1201.2,[10] which has no provision for penalties against a self-insured employer.
Accordingly, the only inquiry is whether the employer acted arbitrarily, capriciously and without probable cause in discontinuing the payment of compensation and medical benefits so as to warrant imposition of attorney's fees under Section 1201.2. "Arbitrary and capricious behavior *46 consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Brown, 98-1063 at 8-9, 721 So.2d at 890, referring to Black's Law Dictionary 104, 211 (6th ed.1990).
Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. See International Harvester Credit v. Seale, 518 So.2d 1039, 1041 (La. 1988).
The fact that an employer is subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim. Sharbono, 97-0110 at 11, 696 So.2d at 1389 (penalties and fees are never assessed automatically against the losing party); Winters v. City of Shreveport, 257 La. 245, 242 So.2d 236 (1970); Eaves v. Louisiana Cypress Lumber Co., 253 La. 741, 219 So.2d 771 (1969). On the other hand, the fact that no witnesses saw the alleged accident or that there was no immediate report of an accident by the plaintiff does not necessarily justify the denial of benefits. The employer must adequately investigate the claim, and the crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action.
In the present case, the employer disputed whether plaintiff's injury was jobrelated. Though there was significant medical testimony as to the extent of his injury, the only support for plaintiff's claim that he sustained an injury on the job was his own testimony.
The investigator for the employer stated the following reasons for terminating benefits: (1) plaintiff did not report an accident when he initially reported backache, although the foreman suggested excessive cold drinks as a possible cause; (2) plaintiff's foreman and his supervisor gave statements, shortly after plaintiff notified his employer of an on-the-job accident, that the foreman moved the angle iron that day and that plaintiff did not lift any angle iron that day; and (3) plaintiff told the doctor that the angle iron weighed eighty pounds, while the foreman official averred that the iron weighed about twelve to fifteen pounds. The investigator, relying principally on statements of the two coemployees who said"emphatically," in the words of the workers' compensation judgethat plaintiff had no occasion to lift any angle iron on the morning of the incident and that they had not seen him lift any angle iron, decided to contest whether the back problem was work-related.
The workers' compensation judge decided the merits of the compensation claim on the basis of her assessment of the credibility and accuracy of the defense witnesses. The judge observed that the defense witnesses did not exclude the possibility that plaintiff might have lifted angle iron while his supervisors were not looking, noting that the witnesses disagreed about plaintiff's location when the angle iron was moved. Further commenting that it would have been consistent with plaintiff's favorable work history for him to have done a task without being instructed to do it, the judge found that plaintiff had injured himself on the job, either by lifting angle iron or in some other manner.
The worker's compensation judge also found, despite the emphatic statements by plaintiff's foreman and supervisor shortly after the incident, that the employer's reasons for terminating benefits were "implausible," and she accordingly awarded penalties and attorney's fees.
Louisiana workers' compensation decisions have historically and properly declined to award attorney's fees in cases in *47 which there are closely disputed factual questions. See 1 Denis P. Juge, Louisiana Workers' Compensation § 5.5 (2d ed.1999); Johnson, supra at § 389. This is such a case. Plaintiff's foreman testified, without contradiction, that he and plaintiff discussed excessive consumption of cold drinks as a possible cause of backache, and plaintiff never mentioned that the cause was lifting angle iron. Moreover, there were several workers in the area, and no one (insofar as this record shows) saw plaintiff lift any angle iron or heard plaintiff complain that he hurt his back while lifting those materials.
The employer's witnesses articulated a clear and objective defense to plaintiffs claim. On the basis of the witnesses' statements of the facts and circumstances after adequate investigation, the employer concluded that there was a reasonably objective basis for doubting whether plaintiffs injury had occurred on the job. The employer therefore did not act in an arbitrary or capricious manner by discontinuing benefits in reliance on the reasonable statements of its employees who emphatically denied that this accident occurred as plaintiff described.
Significantly, the workers' compensation judge apparently rested her decision to award attorney's fees, at least in part, on the fact that the investigator had the statements of the two co-employees before commencing payment of benefits and later stopped the payments. The judge apparently viewed the payment of benefits as somehow estopping the employer from reconsidering the causation issue. Such a view would prevent an employer from giving the employee the benefit of the doubt, pending a thorough assessment of plaintiffs claim of an accident which was reported sometime after the initial report of backache. To punish an employer for initially paying benefits in the employee's best interest is to provide a counterproductive incentive for employers to refuse to start benefits or to hastily terminate them. Payment of initial benefits does not stop the employer from discontinuing benefits upon completion of investigation or upon reconsideration of the causation evidence, as long as there is a reasonable basis for such action.
In summary, the record establishes that the employer was not arbitrary or capricious or without probable cause in discontinuing compensation and medical benefits. The employer should not be penalized for contesting the close factual issue of the disputed occurrence of a workrelated accident.

Decree
We accordingly reverse the judgments of the lower courts insofar as they awarded penalties and attorney's fees, and plaintiffs demands for penalties and attorney's fees are dismissed.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] The doctor noted that plaintiff said the angle irons (which are used for laying bricks over windows) weighed eighty pounds. At trial, plaintiff testified that the angle irons weighed about thirty-five pounds, and the foreman testified the angle irons weighed about fifteen pounds.
[2] Subsequent medical examinations showed a mild degenerative bulging disc that apparently pre-existed the incident at issue here. Plaintiff's treating physician suggested in late August of 1996 that plaintiff might be able to do sedentary work, and the doctor actually released plaintiff to return to full duty in late September of 1996.
[3] The court believed that although the evidence was equivocal as to the source of plaintiff's disability, the worker's compensation judge's findings of causation and disability would survive manifest error review, and that those issues of facts and credibility did not merit this court's attention under La.Sup. Ct.R. X, § 1.
[4] As amended in 1983, Section 1201 B requires payment within a specified time period of the first installment of compensation benefits for temporary total disability, permanent total disability, or death; Section 1201 C requires payment within a specified time period of installment benefits of supplemental earnings benefits; and Section 1201 D requires payment within a specified time period of installment benefits for permanent partial disability.

Section 1201 E, added in 1995, now requires payment within a specified time period of medical benefits.
[5] A 1998 amendment to Section 1201.2 made applicable to workers' compensation claims the provisions of La.Rev.Stat. 22:658 C relating to conduct of insurers in certain insurance claims and to penalties for violations.
[6] Section 1201 also contained a penalty provision for failure to timely pay a final, nonappealable judgment. This penalty provision is not at issue in the present case.
[7] The 1995 amendment also added a time period for payment of medical benefits.
[8] The 1995 amendment also rewrote the section heading of Section 1201.2 to read "Discontinuance of payment; attorney fees," thus further indicating an intent for Section 1201.2 to apply only to cases of discontinuance of benefits and not to cases of failure to commence or pay benefits timely.
[9] Conceivably, an employer who wishes to dispute a claim could pay compensation benefits in bad faith for a week or two and then discontinue benefits, seeking to avoid the possibility of penalties. There is no indication that the commencement of benefits was not in good faith in the present case, and we accordingly focus on the discontinuance.
[10] La.Rev.Stat. 23:1201.2, as amended in 1995, provides:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter. (emphasis added.)