| THIBODEAUX, Judge.
In this workers’ compensation case, plaintiff, Albertson’s, Inc., appeals a judgment of the Office of Workers’ Compensation (“OWC”) in favor of the defendant, Jessica Moulds, denying Albertson’s request for termination and forfeiture of Moulds’ workers’ compensation benefits. The OWC concluded that Ms. Moulds had not misrepresented the extent of her injuries nor her inability to return to work. It denied claims of employee fraud under La.R.S. 23:1208. As a result, Albertson’s request for restitution of benefits was denied, and Ms. Moulds’ benefits, including past due benefits, were reinstated. Ms. Moulds appeals the judgment of the OWC, which denied penalties and attorney fees against Albertson’s on the grounds that its *1254 discontinuation of benefits was not arbitrary and capricious.
For the following reasons, we affirm.
Evidence that Ms. Moulds sustained an injury while in the course and scope of her employment is well-supported. Thus, she is entitled to workers’ compensation benefits. However, Albertson’s termination of benefits cannot be deemed arbitrary and capricious based on the facts before us. We, therefore, deny Ms. Moulds’ request for attorney fees.
I.

ISSUES

Issues of Albertson’s, Inc, as Appellant
We shall consider the following issues on appeal:
(1) whether the OWC erred in its denial of Albertson’s request for termination and forfeiture of workers’ compensation benefits?
| ?,(2) whether the OWC erred in awarding past indemnity benefits when Ms. Moulds was offered a job position within her physical capacity?
Issue of Jessica Moulds, as Appellee
Whether Albertson’s, Inc. was arbitrary and capricious in its discontinuance of Jessica Moulds’ workers’ compensation benefits, giving rise to an award of attorney fees and penalties, will be considered.
II.

FACTS

On November 11, 2000, Jessica Moulds, a full-time lobby clerk at Albertson’s grocery store in Lake Charles, Louisiana, suffered a low back strain while pushing a box of merchandise in the store. As a result of her injury, Ms. Moulds received workers’ compensation benefits based on her average weekly wage of $322.00 per week. Her weekly indemnity benefits amounted to a rate of $214.67 from the date of her injury. On June 15, 2001, Albertson’s discontinued Ms. Moulds’ workers’ compensation benefits, alleging that Ms. Moulds made false statements concerning her physical condition and ability to return to work. Pursuant to La.R.S. 28:1208, Albertson’s filed a disputed claim for compensation of benefits based on fraud.
Albertson’s disputed claim for compensation was sought after video surveillance purportedly illustrated that Ms. Moulds was able to do some physical activity despite her contention that she could not stand for more than ten minutes. Prior to the filing of the claim, Albertson’s offered Ms. Moulds a light-duty employment position to accommodate her injury. However, Ms. Moulds refused the position asserting that she could not do any work. The light-duty position was goffered to Ms. Moulds when her treating physician released her back to work on a limited basis. However, Dr. Erich Wolf later rescinded the release after Ms. Moulds informed him that she continued to suffer pain from the injury. Further, Dr. Wolf informed Ms. Moulds that a second surgery may be required to remedy her back troubles.
The surveillance tape was conducted by a private investigator, Mark Staub, hired by Albertson’s. Staub conducted 96 hours of surveillance between June 15-June 21, 2001, primarily at 735 East School Street, a building that the Lake Charles Police Officer’s Association (“L.C.P.O.A.”) uses to conduct its business operations. On those days, Staub witnessed Ms. Moulds picking up donations from various residents in the Lake Charles area for the L.C.P.O.A. The surveillance tape illustrated that Ms. Moulds was not wearing her lumbar corset or T.L.S.O. brace as prescribed by her *1255 doctor and that Ms. Moulds was able to engage in some physical activity. Ms. Moulds asserted that she often laid on a sofa inside the office building to relieve her back pain. Additionally, she did not pick up anything over ten pounds while injured.
Ms. Moulds’ parents, Kenneth and Kathryn Laughlin, were volunteer workers for the L.C.P.O.A. The L.C.P.O.A. hired Capital Telemarketing Services, Inc.[1] (“Capital”) of Houston, Texas, to aid them in raising money for its police camp. Capital received 40% of the monies raised for its services. The L.C.P.O.A. would provide a check to Mr. Laughlin for 40% of the donations. Mr. Laughlin, in turn, compensated each paid employee of Capital working in that office. The remaining funds were used for the upkeep and maintenance of the car used to pick up donations, gas, electricity for the building, and office supplies necessary to its operation. Any | remaining money was placed in the Capital account. Ms. Moulds asserted that neither she nor her parents were ever paid for picking up donations. Further, Ms. Moulds argued that she picked up donations only to assist her parents who were having car trouble during that week. Albertson’s argued that Ms. Moulds was receiving earnings from Capital.
According to the L.C.P.O.A.’s fundrais-ing records, payments were made to Capital’s paid employees from the 40% Capital received. One of the employee’s, on the records, name began with the initials “JES.” Albertson’s concluded that “JES” was shortened for Jessica Moulds and that Ms. Moulds was receiving wages from Capital and the OWC simultaneously. Ms. Laughlin asserted that “JES” is a shortened form of one of Capital’s employees from Conroe, Texas, and not Jessica Moulds. Detective Jimmy Bailey, president of the L.C.P.O.A., could not confirm that “JES” was indeed Jessica Moulds. Nevertheless, these observations and evidence led Albertson’s to terminate Ms. Moulds’ workers’ compensation benefits.
On July 24, 2001, Ms. Moulds filed an answer in response to Albertson’s disputed claim of compensation and petition of forfeiture denying each allegation. In addition, Ms. Moulds filed a reconventional demand asserting that she was entitled to disability benefits and that Albertson’s discontinuation of her benefits was arbitrary and capricious. In response, Albertson’s denied Ms. Moulds’ reconventional demand, and on July 27, 2001, Albertson’s supplemented its original petition requesting reimbursement of all benefits paid to Ms. Moulds based on the alleged fraud. Again, Ms. Moulds denied all allegations.
On January 16, 2002, after making efforts to mediate, this case came before the Office of Workers’ Compensation. After post-trial briefs were submitted, the workers’ compensation judge rendered judgment denying Albertson’s claim of [..¡forfeiture of workers’ compensation benefits, and its request for reimbursement of those benefits. According to the workers’ compensation judge, Albertson’s had not adequately proved that Ms. Moulds was working for money while receiving workers’ compensation benefits. Further, the workers’ compensation judge found that Ms. Moulds was entitled to benefits, including past due benefits; however, penalties and attorney fees would not be assessed against Albertson’s for terminating benefits.
Awarding Indemnity Benefits
Albertson’s asserts that the OWC erred in awarding indemnity benefits to *1256 Moulds. According to Albertson’s store manager, Owen Wall, Ms. Moulds refused light duty work offered to her within her physical capacity. The record indicates that Dr. Wolf rescinded his release after learning that Ms. Moulds continued to suffer lower back pain. Though the video shows that Moulds could engage in some physical activity, Dr. Wolf did not find that her activities were inconsistent with her physical disability. Based on Dr. Wolfs testimony, we find that Ms. Moulds is entitled to her benefits.
At trial, Dr. Wolf was shown portions of the video obtained through video surveillance. Dr. Wolf was able to observe some of Ms. Moulds’ physical activity. Despite these observations, Dr. Wolf noted that her activities were not outside the scope of her physical capability in light of her injury. His testimony is as follows:
Q. Dr. Wolf, let’s talk about what the video doesn’t show. If I further told that you the testimony in this case was that when Jessica Moulds would go into that office that you see her frequently entering on that day, there was a sofa on which she would lie down while she was inside the office for long periods of time, and if she were to further testify that she needed to do that because she was in pain that day, and on all of those days, would that be something | [important for you to consider about her physical restrictions in those days?
A. Yes
Q. And if that were the case, Doctor, and if Albertson’s were not able to provide her a job where she was able to lie down intermittently throughout the day, and she testifies that she needed to lay down because of the pain, would that disqualify her from the jobs that Albert-son’s was making available?
A. Yes.
Q. And if you further knew those facts about her having to lie down because of pain in that office at times throughout the day, would it then make you believe that her system — her symptoms that she related to you on June 26 were not so inconsistent with her behavior on those days?
A. Yes.
Q. Dr. Wolf, wouldn’t you want — after having — after knowing those facts about her having to recline or lie down in that office during those days, wouldn’t you want to do a functional capacity evaluation to make a determination about her level of functioning—
A. Absolutely.
Q. — and what jobs she could or couldn’t do at this time or back then?
A. Yes.
Q. And without having the results of a functional capacity evaluation, would you maintain your opinions that you formed back in June 2001, that Jessica Moulds was disabled from any type of work?
A. I’m sorry, please restate the question?
Q. Would you maintain your opinion that you formed and that you related in a letter Jessica Moulds was disabled from any type of work before you would have the opportunity to see the functional results of a functional capacity evaluation?
A. Yes.
|7Q. Doctor, would you also, without the benefit of a functional capacity evaluation, and without the benefit of another visit from Jessica Moulds, maintain your position that she needs a second surgery to her lower back?
A. I suspect that based on her sympto-matology, she will need another surgery to her back.
*1257 Based on the above testimony, we find that Ms. Moulds sustained a back injury while in the course and scope of her employment. Her injuries prevented her from resuming work and even light-duty positions offered to her by Albertson’s. As a result, Ms. Moulds is entitled to workers’ compensation benefits and past due benefits, as granted by the OWC.
Attorney Fees and Penalties
Ms. Moulds asserts that the OWC erred in refusing to award penalties and attorney fees against Albertson’s. According to the defendant, Albertson’s termination of her workers’ compensation benefits was arbitrary and capricious because there was no basis for the discontinuance of benefits. We disagree.
Ms. Moulds seeks attorney fees and penalties against Albertson’s for the termination of her benefits. Under the current Workers’ Compensation Act, Ms. Moulds would not be entitled to penalties for discontinuance of benefits.
Two statutory provisions, LSA-R.S. 28:2101(F) and LSA-R.S. 23:1201.2 provide for the award of penalties and attorney’s fee in workers’ compensation cases. The applicable statutory authority for assessing an insurer with penalties and attorney’s fees depends on whether the insurer failed to commence the payment of benefits in a timely fashion or discontinued benefits that had been timely paid. In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41 [,] the Louisiana Supreme Court stated that LSA-R.S. 23:1201.2 applies only when an insurer or employer discontinues payment of benefits; it does not apply when there has been a failure to commence or pay benefits timely. Williams, 98-2271, 737 So.2d at 45. The distinction drawn in the Williams ease is significant because both penalties and attorney’s fees are [«recoverable under LSA-R.S. 23:1201(F), whereas only attorney’s fees are recoverable under LSA-R.S. 23:1201.2. Id.
(Citation omitted). (Emphasis added). Insurance Company of North America v. Labit, 99-2448, p. 2 (La.App. 1 Cir. 11/15/00); 772 So.2d 385, 387.
In this case, payments were paid to Ms. Moulds from the date of her injury until June 26, 2001, when Albertson’s had reason to believe that she had committed workers’ compensation fraud. As a result, this termination of benefits constitutes a discontinuance of benefits, rather than a denial of benefits pursuant to La.R.S. 23:1201.2. Currently, this statute has no penalty provisions, and only awards attorney fees.' As a result, the defendant is not entitled to penalties based on La.R.S. 23:1201.2. Louisiana Revised Statutes 23:1201.2, “Discontinuance of payment; attorney’s fees,” states the following:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
Additionally, we must determine whether Albertson’s “acted arbitrarily, capriciously, and without probable cause in discontinuing the payment of compensation ... so as to warrant imposition of attorney’s fees under Section 1201.2.” Williams v. Rush Masonry, Inc., 98-2271, p. 5 (La.6/29/99); 737 So.2d 41, 45. “The determination of whether an employer/insurer should be cast with ... attorney fees *1258 in a workers’ compensation proceeding is a question of fact....” Lyons v. Bechtel Corporation and AIU, 00-0364, p. 16 (La.App. 3 Cir. 12/27/00); 788 So.2d 34, 45, writ denied, 787 So.2d 966 (La.2001).
Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.
Awards of penalties and attorney’s fees in workers’ compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed.
The fact that an employer is subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim.
(Citations omitted). Williams, 737 So.2d at 45-46.
In this case, plaintiffs disputed whether Ms. Moulds’ injury prevented her from returning to a light duty position offered to her by Albertson’s. Albertson’s hired an investigator to conduct video surveillance after she refused the position. Video surveillance tapes indicated that Ms. Moulds picked up donations from various residents for the L.C.P.O.A. for several hours over a six-day period, shopping at the Dollar General, as well as other activities that required some bending and standing. Additionally, the store director of Albertson’s, David Swissler, testified that he saw Ms. Moulds and her family at Mr. Gatti’s, a local pizza restaurant, while she was on disability leave. Swissler testified before the workers’ compensation judge that Ms. Moulds bent down to pick up a fork she had dropped and that she was not. wearing her corset. Based on these facts, it was reasonable for the workers’ compensation judge to conclude that there was evidence on which the employer could reasonably | ]0rely upon to terminate benefits.[2] Finding no error in the judgment of the Office of Workers’ Compensation, we conclude that Albertson’s decision to discontinue benefits was not arbitrary and capricious.
III.

CONCLUSION

For the above reasons, the judgment of the OWC awarding the defendant, Jessica Moulds, compensation benefits, including past due benefits, is affirmed as is the judgment insofar as it denies penalties and attorney fees. All costs of this appeal are assessed against appellant, Albertson’s, Inc.
AFFIRMED.

. Capital Telemarketing Services, Inc. is also referred to in the record as Capital Productions.

. Albertson's contention that the workers’ compensation judge misinterpreted La.R.S. 23:1208 by requiring proof that Ms. Moulds earned wages is misplaced. The judge's reasons for judgment demonstrates she relied on evidence independent of this assertion in reaching her decision.