| JAMES L. CANNELLA, Judge.
The Defendant, Gilbert Southern Corporation, appeals from a workers’ compensation judgment in favor of the Plaintiff, Sidney Jones. We reverse in part, amend in part, and affirm as amended.
On July 5, 2001, the Plaintiff began working with the Defendant as a welder on a project constructing a power plant in Carville, Louisiana. In August of 2001, he began seeing doctors for pain in the extremities, limping, numbness and joint pain. It was initially thought by the emergency room doctor at River Parishes Hospital, Dr. Ronald Waguespack, the Plaintiffs family practitioner, and Dr. Yaw Twum-Antwi, an internist, that he had some type of arthritis, osteoarthritis or bursitis and he was tested for rheumatoid arthritis. X-Rays were negative for spinal involvement and no .tests were conducted relative to his neck or lumbar spine. He continued to work during this period, but as noted by his supervisor, Kenneth Leg-gion, Sr. (Leggion), the Plaintiff began complaining at work of feeling tired and his work quality began to decline. He underwent a magnetic resonance imaging (MRI) test and was referred to Dr. Gregory Dowd, a neurosurgeon, who concluded that he had a disc problem requiring surgery. |aThe surgery was performed on September 14, 2001. Afterwards, the Plaintiff collected his last paycheck from the Defendant and informed Leggion that he needed time off due to the operation. His last work day was September 3, 2001. His medical expenses were paid by his health insurer, the premiums for which had been fully paid by the Defendant.
On April 18, 2002, the Plaintiff filed a Disputed Claim for Compensation. The matter was heard on October 29, 2003. On December 12, 2003, the workers’ compensation judge found that the Plaintiff suffered a compensable work related injury, and awarded him temporary, total disability from his last working date and continuing. He found the Plaintiff to be entitled to all related and reasonable medical expenses and further found that he is entitled to penalties in the amount of $2,000 and attorney’s fees of $2,000.
On appeal, the Defendant contends that the workers’ compensation judge erred in finding that the Plaintiff proved the occur *159 rence of a work related injury and by failing to find that the Plaintiff made willful misrepresentations under oath for the purposes of obtaining workers’ compensation benefits. The Defendant further asserts that the workers’ compensation judge failed to acknowledge a stipulation that the Defendant is entitled to a set-off against the payments made by the health insurer and in awarding penalties and attorney’s fees.
The manifest error standard of review applies to factual findings in a workers’ compensation ease. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380; Hookfin v. Advantage Nursing Services, Inc., 03-340, p. 3 (La.App. 5th Cir.10/15/03), 860 So.2d 57, 59, writ denied 03-3136 (La.1/30/04), 865 So.2d 85. In applying the manifest error-clearly wrong standard, we must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Chaisson, 97-1225 at 13; 708 So.2d at 380; Hookfin, 03-340 at 3, 860 So.2d at 59. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though we may feel that our own evaluations and inferences are as reasonable. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993); Hookfin, 03-340 at 3, 860 So.2d at 59. Thus, if there are two permissible views of the evidence, a factfinder’s choice of them can never be manifestly erroneous or clearly wrong. Chaisson, 97-1225 at 14, 708 So.2d at 381; Hookfin, 03-340 at 4, 860 So.2d at 59. Accordingly, if the factfin-der’s findings are reasonable in light of the record, the appellate court may not reverse or modify the judgment. Chaisson, 97-1225 at 4, 708 So.2d at 381; Hookfin, 03-340 at 4, 860 So.2d at 59.
WORK RELATED INJURY
La.R.S. 23:1021(1) defines an accident as, “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.”
According to the Plaintiff, he and Chris Owen (Owen), a co-worker, were working 65 feet in the air standing on a scaffold one day in July of 2001. He did not remember the exact day and said it was somewhere around the 20th, 21st or 22nd. Late in the day, near quitting time, they found that they needed the Porta-Power jack, which is used to dislodge metal. Owen went to get it. The Plaintiff said that Owen tied the jack to some rope before climbing back up the scaffold. Once there, the two men hauled the jack up hand over hand, without the help of a pulley. The Plaintiff felt tightness in his shoulder, but believed it was a normal ache from working a long day. He thought that it would go away and did not think it important. When his symptoms appeared, he did not connect them to the | ^incident with the jack. He first went to seek medical attention at River Parishes Hospital on August 8, 2001 because the pain was causing him to limp. X-rays were taken that were negative and the doctor there diagnosed the Plaintiff with arthritis. The Plaintiff still did not connect the incident to his symptoms. He thereafter went to Drs. Waguespack and Twum-Antwi, who focused on arthritis as the cause. He subsequently went to the Prevost Memorial Hospital emergency room where he saw the emergency room doctor. The Plaintiff said that he told the doctor about the incident with the Porta-Power jack, but that the other doctors all thought he had arthritis. The doctor ordered a MRI and referred him to Dr. *160 Dowd. Dr. Dowd diagnosed the cervical disc problem and set up the surgery. In that first visit, he informed the doctor about pulling up the jack. The Plaintiff has not been unable to return to work since then. He is facing a possible second surgery, if his condition does not improve.
The Plaintiff testified at trial that he thought he told some of the doctors about pulling up the Porta-Power jack. He also claimed that he told Leggion about the incident when he picked up his check after his surgery. However, in his deposition, the Plaintiff denied telling anyone about the incident with the Porta-Power jack until Dr. Dowd. The Plaintiff admitted that when he was hired, he went through safety training and was instructed to report any accident, no matter how small. In addition, every day on his time card, he checked no to the printed question, “Injury today?” At trial, the Plaintiff was confused when questioned about the discrepancies between his deposition and the trial testimony. He explained that his mind was not working right and his memory was faulty since the surgery. In his deposition, he also indicated that he had not related the incident to his symptoms, because the doctors were telling him that he had some type of arthritic condition.
[fiLeggion testified that the Plaintiff was not required by the job description to pick up any equipment, such as a jack, except his welding tools. He stated that sometime in July or early August, the Plaintiff began to complain about being tired all of the time and his work started to suffer. He took off work for a few days to try to recuperate, which is not uncommon among these workers because they work hard for long hours. The Plaintiff returned to work. Approximately one week before he left the job, Leggion questioned the Plaintiff about his condition because his work was not improving. Leggion stated that the Plaintiff said that he had suffered some injuries in a car accident in the past and maybe those were acting up. He did not tell Leggion about the incident with the Porta-Power jack. In September, after the operation, the Plaintiff went to the site to pick up his check. He informed Leg-gion then that he had undergone surgery and asked for a reduction of force termination due to his inability to return to work. Leggion agreed to do so and did not ask what type of surgery the Plaintiff underwent. Afterwards, Leggion and the other workers subsequently collected money for the Plaintiff to help him financially. Leggion claimed that the Plaintiff still never informed him about the jack incident.
Dr. Waguespack testified that he had been treating the Plaintiff since 1976 for various ills. On August 11, 2001, he saw the Plaintiff for complaints of left shoulder pain and arm and leg numbness. Doctor Waguespack thought that the Plaintiff had bursitis. He stated that the Plaintiff did not mention any work incident. Dr. Wag-uespack noted that it was possible that he failed to ask about a traumatic event, but stated that it was more likely that he did ask, because it was his practice to do so, given the symptoms. However, he also testified that he took a “problem oriented history,” which was specific to the symptoms, and noted that some patients do not disclose possible incidents causing problems because another doctor may be involved and some patients are secretive.
l7Pr. Twum-Antwi testified that he first saw the Plaintiff on August 14, 2001, six days after the Plaintiff saw Dr. Wagues-pack. At that time, the Plaintiff complained of joint pain that he said started approximately two weeks before. During his examination, he discovered that the Plaintiffs neck was painful on the left side when turned. Because the doctor focused on joint pain, he tested the Plaintiff for *161 rheumatoid arthritis or osteoarthritis. The tests were negative and he diagnosed the Plaintiff with “arthritia” or “arthral-gia”, which just means joint pain. He said that this condition may develop with or without a traumatic incident. He prescribed heat, muscle relaxants, a mijd pain medication, low fat diet and exercise of the affected joints. On August 22, 2001, his last visit, the Plaintiff, was feeling better.
Dr. Twum-Antwi testified that the Plaintiff did not give a history of trauma on August 11th, “pertaining to the symptoms for which he came in on that day.” However, he noted that it is common for patients to forget to tell the doctor things that may be responsible for the symptoms. Although he thought that the Plaintiff may have related some type of accident affecting his right upper extremity, the doctor did not remember when this incident occurred because at the time he did not believe it was relevant.
According to the medical reports of Dr. Dowd, in his first visit with the Plaintiff in September of 2001, the Plaintiff related a history of pulling on a Porta-Power jack sometime in July.
The Defendant contends that the inconsistencies in the Plaintiffs testimony show that he willfully and fraudulently misrepresented the facts about an accident in order to obtain workers’ compensation. It contends that the doctors that treated him prior. to Dr. Dowd denied that he said anything about an accident in relation to his complaints. The Defendant notes that the Plaintiff signed his time card each day with a denial that he had suffered an accident. Furthermore, he knew that he |swas supposed to report any incident however small. The Defendant contends that even if the Plaintiff told Leggion about the incident with the Porta-Power jack when he picked up his check in September, which it denies, that was the point that he realized he was going to be disabled with no source of income. As a result, he sought to connect that event with his injury, so that he could obtain workers’ compensation benefits.
Although the Plaintiffs deposition testimony and trial testimony were inconsistent in regard to whom he told about the incident, the Plaintiff was puzzled and confused about his earlier statements and said that after the surgery, he was having trouble remembering and that sometimes he cannot “think well.” Reviewing his cold testimony, it does not . appear that he was intentionally misleading- the court, especially considering that the Plaintiff had given a history to Dr. Dowd in September of 2001 that tracked his trial testimony. In addition, the doctors that he saw prior to Dr. Dowd were focused on arthritis as a cause for his complaints, so he was not connecting the incident with the symptoms. As Dr. Waguespack stated, patients often do not tell the doctor all possible causes for the complaints and Dr. Twum-Antwi testified that the Plaintiff did not give a history of trauma, “pertaining to the symptoms for which he came in on that day.” The Plaintiff is not a sophisticated patient. Furthermore, he testified that at work, he and Leggion had joked about his getting old as a cause for his deteriorating condition. Thus,.it was clear that he did not make the connection between his complaints and the lifting of the jack until his visit with Dr. Dowd and the discovery of the disc problem.
The timeline of his complaints support the occurrence of the incident. The Plaintiff went to the Prevost Memorial Hospital a few days into August. He claimed that the incident happened sometime in late July. Although he gave three possible dates in his deposition, he also told the Defendant that he was not sure, it |9was “somewhere around up in there. I *162 know it was the seventh month.” He did not remember what he had said in his deposition and explained at trial that his memory was faulty. He also said in his deposition that he did not tell the supervisor at that time because “No, we was working too much for that. All they want to see is just work, just get the job done. I mean they didn’t want to hear all that.” He said that when he saw Dr. Wagues-pack, he did not say anything about the accident because “my mind wasn’t on that, you know?”
At trial, there were two permissible views of the evidence and the workers’ compensation judge weighed the evidence, assessed the credibility of the witnesses and concluded that the Plaintiff had sustained a work related accident causing his injury. Under the manifest error standard of review, this Court cannot disturb the workers’ compensation judge's findings unless we find that his conclusion was unreasonable. Stobart, 617 So.2d at 882; Hoolcfin, 03-340 at 3, 860 So.2d at 59. As there are two permissible views of the evidence here, the workers’ compensation judge’s choice of them cannot be manifestly erroneous or clearly wrong. Chaisson, 97-1225 at p. 14, 708 So.2d at 381; Hook-fin, 03-340 at 4, 860 So.2d at 59. Thus, we find that the workers’ compensation judge did not err in finding that the Plaintiff was entitled to workers’ compensation benefits and payment of medical expenses.
SET-OFF
We agree with the Defendant on this issue. The parties stipulated prior to trial that the Defendant had fully funded the Plaintiffs health insurance and would be entitled to an off-set for the medical expenses paid by the health insurer in the event of a judgment in the Plaintiffs favor. The workers’ compensation judge failed to include the set-off in the judgment. Thus, we will amend the judgment to reflect the set-off for payments made by the insurer until the date of trial.
| ^PENALTIES AND ATTORNEY’S FEES
La. R.S. 23:1201 F provides for the imposition of penalties and attorneys fees against the employer when indemnity or medical benefits 'due to the claimant are not paid timely, unless the claim is reasonably controverted, or if such nonpayment results from conditions over which the employer had no control. La.R.S. 23:1201 F(2). In order to reasonably controvert a claim, the Defendant must have some valid reason or evidence upon which to base the denial of benefits. Brown v. Texas-La Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890; Barbarin v. TLC Home Health, 02-1054, p. 9 (La.App. 5th Cir.4/29/03), 845 So.2d 1199, 1206. The question is whether the Defendant “engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time which they refused to pay all or part of the benefits allegedly owed.” Brown, 98-1063 at 9, 721 So.2d at 890; Barbarin, 02-1054 at 9, 845 So.2d at 1206.
The assessment of penalties and attorney fees by the workers’ compensation judge is a factual question which is not to be disturbed on appeal in the absence of manifest error. Barbarin, 02-1054 at 9, 845 So.2d at 1206. Awards of penalties and attorney’s fees in workers’ compensation cases are penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. See, Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to *163 be strictly construed. Williams v. Rush Maspnry, Inc., 98-2271, p. 8 (La.6/29/99), 737 So.2d 41, 46. The fact that an employer may be subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim. Sharbono, 97-0110 at 11, 696 So.2d at 1389 (penalties and fees are never assessed automatically against the losing party); Williams, 98-2271 at 9, 737 So.2d at 46.
The evidence here was contradictory as to whether the Defendant was informed about the incident prior to the claim being filed and whether the injury was employment related. Although we do not find manifest error in the workers’ compensation judge’s finding that a work-related accident did occur, the facts support a reasonable basis for the claim to be controverted. Thus, the trial judge was manifestly erroneous in awarding penalties and attorney’s fees and we will reverse, that part of the judgment.
Accordingly, the judgment is affirmed as to the award to Plaintiff for indemnity benefits and medical expenses. The judgment is amended to include a credit to the Defendant for the medical expenses paid by the Plaintiffs health insurer to date of trial. The judgment is reversed as to the award for penalties and attorney’s fees.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.