WALTER J. ROTHSCHILD, Judge.
Un this workers’ compensation case, the employer/insurer appeals from a ruling awarding compensation benefits, penalties and attorney’s fees. In addition, the claimant has answered the appeal on several grounds. For the reasons stated herein, we amend and affirm as amended.
On August 31, 2001, Roxana B. Rastegar filed a disputed claim for compensation seeking compensation benefits and medical treatment, as well as penalties, attorney’s fees and interest as a result of a work - related injury she sustained on October 15, 2000. Claimant’s employer, The Magnolia School, Inc., and its insurer, Bridgefield Casualty Insurance Company, answered the claim admitting the initial work-related injury, but denying that additional benefits were owed.
After protracted discovery, trial in this matter commenced on July 2, 2003. The trial was interrupted by the removal of defense counsel and the subsequent reassignment of the case to another workers’ compensation judge. Trial eventually concluded on June 9, 2008. Judgment was issued in favor of the claimant on June 23, 2009. In its ruling, the workers’ compensation judge found that claimant was | sentitled to temporary total disability benefits from September 25, 2001 through January 8, 2003 and supplemental earnings benefits from January 9, 2003 through March 27, 2004. The judgment also ordered the employer/insurer to pay for certain medical care and expenses, and further awarded penalties and attorney’s fees as provided by statute.
Magnolia School/Bridgefield suspensively appeal from this judgment on the basis of several assignments of error. Specifically, defendants argue that the claimant’s pre-existing mental condition as well as evidence that she completed nursing school after this accident shows that she was not entitled to additional compensation benefits. Defendants also contend that the workers’ compensation judge erred in awarding penalties and attorney’s fees in this matter.
Testimony and evidence presented at trial indicates that Roxana Rastegar was employed as a nurse by The Magnolia School, Inc. on October 15, 2000 when she was attacked and injured by an adult male patient at the facility. Claimant testified that the attack by the patient lasted for 20 or 30 minutes. After this incident, claimant went to the emergency room complaining of headaches and pain in her shoulders and neck. Claimant was seen the following day by Dr. Dabney Ewin, who diagnosed her with cervical strain and anxiety and prescribed physical therapy. Claimant was subsequently diagnosed with post-traumatic stress disorder, and she was released to return to her employment on restricted activity on October 23, 2000. She was released to regular duty on October 28, 2000.
Claimant attempted to return to work at this time, but asked to be relieved of her duties when the male patient who attacked her returned to the facility causing a relapse of her symptoms. Claimant testified that she continued to experience depression, anxiety and stress, and in November of 2000, she consulted with Dr. Kaleem Arshad, a psychiatrist who had previously treated her for depression. Dr. |4Arshad found claimant to be unable to return to work based on her emotional and mental symptoms, and claimant stopped reporting to work after November 6, 2000.
On November 10, 2000, defendant’s workers’ compensation claims representa *50 tive made a recorded statement of Ms. Rastegar’s claims, and on November 20, 2000 claimant began receiving compensation benefits retroactive to October 16, 2000. The benefits were calculated at a rate of $320.53 per week, based on an average weekly wage of $480.40. However, this amount did not include overtime, and defendants did not dispute that the correct compensation rate should have been $355.39. Defendants terminated the compensation benefits on December 24, 2000 on the basis that the medical records did not indicate that claimant’s continuing mental health issues were related to the work-related incident.
In 2001, Dr. Arshad found that claimant was incapacitated from returning to work due to her mental condition, and he referred claimant to a neurologist. Dr. Arshad also recommended that claimant return to school. Claimant enrolled in Nunez College in Baton Rouge and then in Delgado Community College. However, Dr. Arshad continued to disable her from work.
Claimant filed this disputed claim for compensation in August of 2001. In June of 2002, claimant was evaluated by Dr. Richard Roniger at the request of defendants. Dr. Roniger issued a report opining that claimant’s psychiatric problems were not related to the work-related incident, and that since claimant was enrolled in school, she should be able to return to work.
In order to resolve the conflicting opinions between the two psychiatrists, the workers’ compensation judge appointed an independent psychiatrist to conduct an examination for the court. Dr. Doris Le-Blanc examined claimant on February 3, 2003 and found claimant to be suffering from post-traumatic stress disorder and 1 ¿recurrent depression which was caused by the incident of October 15, 2000. Dr. LeBlanc opined that claimant was totally disabled from work and that she should continue with psychiatric treatment. The deposition of Dr. LeBlanc was taken on June 20, 2003, and this deposition was introduced at trial. Claimant also submitted the deposition of Dr. Arshad regarding her pre-existing medical condition and her inability to return to work as a result of the October 15, 2000 attack.
Claimant attempted to return to part-time work in 2003 but was unsuccessful because of recurring symptoms. She returned to full time work earning at least 90% of her pre-accident weekly wage in May of 2004. She continued to treat with Dr. Arshad until 2004 when her husband’s health insurance stopped payment. In July of 2003, prior to trial, defendant tendered to claimant a lump sum representing indemnity benefits from December 24, 2000 to September 27, 2001.
Defendants argue on appeal that claimant was not entitled to temporary total disability benefits or medical expenses incurred as a result of her mental condition from September 27, 2001 to May 1, 2004. In support of this argument, defendants contend that in September of 2001, claimant submitted a sworn certification to the Louisiana Board of Nursing that she was free from any type of psychological condition precluding her from the practice of nursing. In January of 2002, claimant enrolled in nursing school, and defendants argue that she was no longer disabled from performing her previous duties as an LPN. Defendants further argue that any psychological problems claimed by Ms. Rastegar existed prior to the work-related incident in this case. Defendants rely on evidence that marital problems had caused claimant’s depression prior to 2000, and these problems continued after the incident.
*51 Although the medical records in claimant’s file indicate that she had been treated for depression by Dr. Arshad prior to this incident in 2000, the record also | indicates that this condition did not prevent claimant’s employment as an LPN. Following the October 15, 2000 incident at work, Dr. Arshad diagnosed claimant with post-traumatic stress disorder (“PTSD”) and recurrent depression as a result of the attack, a diagnosis not made prior to this incident. He stated that the depression symptoms have been more difficult to treat since the incident because of the PTSD element involved. Dr. Arshad was of the opinion that claimant’s mental and emotional symptoms were aggravated by and had gotten worse since the work-related incident, and claimant was disabled from her work. Further, although claimant enrolled in a nursing program in 2002, Dr. Arshad explained in his deposition that he believed that claimant would be able to cope with the role of a student better than that of an employee.
The record also contains the report of Dr. Richard Roniger who examined claimant in July of 2002 at the request of defendants and opined that claimant’s psychiatric problems were not related to the attack, and that she should be able to work as an LPN if she was able to attend nursing school. However, claimant was also examined in 2003 by Dr. Doris Le-Blanc, an independent psychiatrist who was appointed by the court based on the conflicting medical opinions presented. Dr. LeBlanc found evidence that claimant suffered from PTSD and recurrent depression, and opined that both were the cause of the work-related incident in 2000. Dr. LeBlanc found that claimant was totally disabled and recommended future psychiatric treatment.
Dr. LeBlanc’s deposition is contained in the record, and indicates that the psychiatrist found clear and convincing evidence of a causal relationship between the diagnosis of PTSD and the work-related incident. Dr. LeBlanc explained that the claimant’s previous mental issues were not related to this diagnosis and that she believed the claimant was disabled from working although she was capable of 17attending nursing school. Dr. LeBlanc believed that as a result of this diagnosis, claimant would require psychological treatment for approximately two years.
The appellate court’s standard of review in a workers’ compensation case is governed by the manifest error or clearly wrong standard. The reviewing court is compelled to review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Clement v. Blanchard, 05-531 (La.App. 5 Cir. 2/14/06), 924 So.2d 295, 296, (citing Bruno v. Harbert Int’l, 593 So.2d 357, 361 (La.1992)). In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. “Thus, ‘if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Turner v. Delta Beverage Group/Pepsi America, 07-529 (La.App. 5 Cir. 11/27/07), 973 So.2d 764, 775, writ denied, 08-15 (La.2/22/08), 976 So.2d 1289, citing Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 380-381.
In order for an employee to establish entitlement to temporary total disability benefits, she must prove by clear and *52 convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment regardless of its nature. La. R.S. 23:1221(l)(c). A claimant must introduce objective medical evidence to establish by clear and convincing evidence that she is unable to engage in any type of employment. Fassitt v. Jefferson Parish Hosp. Service, 07-695 (La.App. 5 Cir. 12/27/07), 974 So.2d 757, 760.
|sIn the present case, the claimant submitted both lay testimony and medical evidence to support her claim of disability. During trial of the matter, the workers’ compensation judge heard conflicting medical testimony and opinions regarding claimant’s alleged psychological injuries as a result of the work-related injury. We have reviewed the entire record in this matter, including the pleadings, trial testimony and numerous exhibits, and we find from the record that a reasonable basis exists for the determinations made by the factfinder.
Both Drs. Arshad and LeBlane opined that claimant suffered from PTSD which was caused by the incident at work on October 15, 2000 and rendered her with temporary total disability, while Dr. Roni-ger disagreed with both the diagnosis and the disability status. Both Mrs. Rastegar and her husband testified that although she was depressed at times prior to the incident in 2000, her condition dramatically changed following the incident at work. Although Mrs. Rastegar admitted that she returned to school in 2002, there was ample testimony to support the factfinder’s determination that this action did not change her disability status with regard to employment.
After listening to this testimony and reviewing the evidence presented, the workers’ compensation judge chose to credit the testimony of claimant and Drs. Arshad and LeBlane rather than the testimony of Dr. Roniger. A review of the record reasonably supports this determination, and we find no manifest error in the judgment awarding additional compensation benefits and medical expenses related to her continued injury.
Defendant also disputes the award of penalties and attorney’s fees in this case. La. R.S. 23:1201(F) imposes a penalty for “failure to provide payment.” In Bordelon v. Cox Communications, 05-40 (La.App. 5 Cir.2005), 905 So.2d 1107, 1113, writ denied, 05-1759 (La.1/27/06), 922 So.2d 549, this Court stated as follows:
When an employer has failed to pay benefits, the proper standard for review of that decision is whether the employer reasonably controverted the claim. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885. A claim for workers’ compensation is reasonably controverted if the employer has some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right to benefits has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Brown v. Texas-LA Cartage, Inc., supra. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes, such as the statutes awarding penalties and attorney fees, are to be strictly construed. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41
*53 In the present case, the workers’ compensation judge assessed defendant with three separate penalties in the amount of $2,000 each: 1) for the improper payment of temporary total disability benefits based on the improper calculation of the claimant’s average weekly wage; 2) for the failure to authorize and pay Dr. Arshad’s invoice and 3) for the failure to reimburse claimant for replacement eyeglasses. Further, the workers’ compensation judge imposed attorney’s fees on defendant in the amount of $30,000, and defendant claims the amount is excessive.
The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers’ compensation action is essentially a question of fact. Factual findings are subject to the manifest error or clearly wrong standard of review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556.
Upon review of the record, we fail to find manifest error in the workers’ compensation judge’s assessment of penalties for failure to pay medical bills and expenses. The record in this case contains sufficient factual information from | inwhich to conclude the employer/insurer failed to pay the invoices of the claimant’s treating physician, Dr. Arshad, although these invoices were sent by claimant’s counsel. In addition, the record shows that the employer/insurer failed to reimburse claimant for medical expenses. The record supports a finding that these expenses were not reasonably controverted by the employer/insurer, thus triggering the imposition of penalties and attorney’s fees. Further, as previously noted, the workers’ compensation judge correctly determined that defendants improperly calculated claimant’s average weekly wage by failing to include overtime pay. We find no error of the trial court in awarding penalties against the employer for this miscalculation which should have been known to the employer.
However, as set forth in claimant’s answer to the appeal, we note that the ruling of the workers’ compensation judge failed to include in its judgment an adjustment to the tender made to claimant in July of 2003 for this difference in the average weekly wage. We therefore amend the judgment in the amount of $1,402.40 to reflect this difference.
Further, we find merit in claimant’s answer to the appeal that the workers’ compensation judge improperly credited the employer for the payment of benefits made by the tender. The record indicates the tender applied to the period of December 25, 2000 through September 27, 2001. As reflected in the judgment, claimant was found to be entitled to be temporary total disability benefits from September 25, 2001 through January 8, 2003, a time period only covered by the time period for two days. We conclude therefore that the workers’ compensation judge erred in awarding defendants a credit of $12,821.20 and we hereby amend the ruling to provide that no such credit is owed to the employer based on the findings of the workers’ compensation judge that claimant was entitled to temporary total disability benefits for this time period. Finally, based on evidence Inin the record, we fail to find merit in claimant’s argument that she is entitled to multiple penalties for the employer’s failure to pay medical expenses in this case.
With regard to the assessment of attorney’s fees, claimant’s attorney submitted an affidavit with detailed billing sheets indicating that the attorneys had invested over 300 hours in the prosecution of this claim. Further the affidavit indicated that *54 the litigation persisted over the course of several years, including multiple trial dates. The record in this case consists of several volumes of pleadings and trial testimony and numerous exhibits. Our review of the record in this case fails to show an abuse of discretion in the award of attorney’s fees.
Claimant also seeks costs and reasonable attorney’s fees which were incurred by counsel in opposing defendant’s appeal. We find claimant is entitled to an additional $2,000.00 for this purpose, and the judgment is amended to reflect this amount.
Accordingly, for the reasons assigned herein, the judgment of the workers’ compensation judge is amended as specified herein, and as amended, is affirmed. Defendants shall bear all costs of this appeal.

AFFIRMED AS AMENDED.