619 So.2d 712 (1993)
Sylvia CLINE
v.
ST. JUDE MEDICAL CENTER, INC., et al.
No. 92-CA-1775.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
Jerome Friedman, Thomas E. Stirewalt, Metairie, for plaintiff.
Teresa C. Leyva, Denis Paul Juge, Sutherland, Juge, Horack & Dwyer, New Orleans, for defendant.
Before BARRY, WARD and ARMSTRONG, JJ.
*713 ARMSTRONG, Judge.
This appeal arises out of a suit to recover worker's compensation benefits. The central issues presented for review are: (1) whether the trial court erred in awarding the maximum in supplemental earnings benefits (SEB); (2) whether the trial court erred in failing to award a complete credit for the total number of weeks of temporary total disability against the SEB obligation; (3) whether the trial court erred in refusing to award plaintiff, Sylvia Cline, penalties; and (4) whether plaintiff is entitled to an award of attorney's fees for this appeal.
Plaintiff, a nurse, was injured on August 29, 1987 while lifting a patient from the floor. At the time of her injury she was working in the course and scope of her employment with defendant, St. Jude Medical Center ("St. Jude"). She immediately felt a severe pain in her lower back radiating down her right leg into her foot. The trial court, in its Reasons For Judgment, summarized plaintiff's course of treatment as follows:
Immediately upon her [plaintiff's] injury she requested and was given medication for pain by doctors at her place of employment. She finished the work day (she states that she had no choice but to do so) and went home to bed. The following work day she went to see Dr. Robert Mimeles, an orthopedic surgeon, which began a lengthy and detailed course of diagnosis and treatment by an array of medical professionals.
Dr. Mimeles first saw Cline [plaintiff] on September 4, 1987. After taking a history and performing an orthopedic exam, he noted indications of a pinched nerve and prescribed muscle relaxers and anti-inflammatories. He then saw her several more times, each time noting that she suffered from severe pain in her lower back with pain radiating down her left leg, in her left buttock, with tingling in her fingers of the left hand and numbness in her left foot.
Finding no success from the medication and physical therapy, Dr. Mimeles recommended that Cline be hospitalized for tests, including a myelogram. Cline refused to undergo a myelogram, professing an allergy to the iodine used in that procedure. However, she was admitted to East Jefferson Hospital on September 29, and an MRI, CAT Scan, bone scan and EMG nerve conduction study were performed. She was discharged on October 3.
Dr. Mimeles testified, via deposition, that none of these tests revealed nerve root compression and that his diagnosis was soft tissue sprain. The MRI, in his opinion, showed a slight bulging of the L# -4 space which is evidence of dehydration, a normal aging process, and not the cause of her back pain. He found no evidence of herniation, no obvious mechanical derangement caused by this injury, and no pressure on the neural elements in her back.
He found no long range disability and stated that she could be released back to work based on the results of the testing done. In terms of further diagnosis, he testified that the only thing further that could be done was a lumbar myelogram, which Cline refused, and he suggested that she seek a second opinion.
For this second opinion Cline saw Dr. John D. Jackson, a neurosurgeon, who had performed a laminectomy and discectomy on her in 1975.[1] She first saw Dr. Jackson on October 16, 1987, performed a neurological exam, and reviewed the test results from her hospitalization. Dr. Jackson found no disc herniation but, rather, degenerative changes, and thought that she had an excellent chance of recovery through conservative treatment. He recommended physical therapy rather than surgery, and suggested that Cline lose weight.
Dr. Jackson saw Cline on two subsequent occasions; December 14, 1987, and January 14, 1988, at which time Cline complained that the pain was worse. Dr. *714 Jackson suggested that she undergo a myelogram, which she refused. Dr. Jackson released her to work and he has not seen her since that January visit.
According to Cline's testimony, she then saw a Dr. Natal at Tulane Medical Center, who referred her to Charity Hospital because of her financial situation. She then saw Dr. Charles Billings, then Dr. Whitecloud, then she went back to Dr. Billings. Neither Dr. Natal or Dr. Whitecloud testified at this trial.
Dr. Billings, an orthopedic surgeon, testified that he first saw Cline on April 15, 1988, as a referral by Dr. Montisherri, a neurosurgeon (whose testimony was also not offered at trial). Dr. Billings took a history, performed an orthopedic exam, and reviewed the previous diagnostic tests.
Contrary to the other medical testimony, Dr. Billings found that the MRI showed significant disc herniation at the L3-4 level. He diagnosed post-traumatic lumbar disc and joint disease, recommended further diagnostic studies, and prescribed pain relievers and anti-inflammatories. Dr. Billings saw Cline several times between the initial examination and December, 1988, each time noting her complaints of persistent pain.
Dr. Billings opined that, "... repeat lumbar spine surgery would probably represent the best means of rehabilitation because of the persistent complaint of pain." He made this determination based upon the persistence of pain despite the conservative measures taken and the physical findings of her condition. He recommended a lumbar discectomy and fusion and found her chances of recovering to be slim without surgery.
However, Cline refused the hospitalization for a proposed myelogram and surgery, and no other actions were taken by Dr. Billings. He did find that she was disabled from full-time nursing, but did not prohibit her from light duty.
Also testifying through deposition was Dr. Robert Applebaum, a neurosurgeon, who first saw Cline on June 8, 1988. He performed a neurological examination and reviewed her previous records and found, "moderate mechanical findings compatible with nerve root irritation." He examined her on three subsequent occasions, and made the same findings each time.
Dr. Applebaum found Cline to be a candidate for further diagnostic studies, including a myelogram followed by a CAT scan and would recommend surgery if the tests indicated a rupture. He testified that, based on her history, there is a 50-50 chance that Cline has a ruptured disc. He based this opinion on the nerve root irritation shown by the clinical evidence, and her poor response to conservative treatment.
Post-trial, with leave of court, the deposition of Dr. Harold Stokes was taken and admitted into evidence. Dr. Stokes, an orthopedic surgeon, saw Cline at the request of the Defendants on three occasions, the first on June 20, 1988. He found that her complaints were consistent with lumbar degenerative disc disease, and that it was necessary to do a myelogram to "clear the air" on the suggestion of herniation at the L3-4 level.
In connection with the second examination conducted on March 12, 1990, Dr. Stokes formulated the opinion that Cline was suffering from a lumbar disc. He found that she could only do sedentary work in a setting where she could frequently stand and which would not involve stooping, bending, or lifting. He also testified that she was not totally disabled because of her ability to do sedentary work.
In January, 1989, Cline was referred by her attorney to Dr. Edna Doyle, a neurologist who was qualified as an expert in the field of physical medicine and rehabilitation. Dr. Doyle examined and treated Cline from January, 1989, until the time of trial. Most of Doyle's efforts were in the realm of physical therapy and conservative treatment.
Dr. Doyle diagnosed "sacroiliac disfunction", and would not recommend surgery because she found no neurological deficit. However, she found that Cline is too dysfunctional, both physically and *715 emotionally, to do any work. She testified that Cline, because in pain all the time, cannot do even light-duty work.
Dr. Doyle suggested that the conservative treatment was not successful because of Cline's excessive weight, her financial inability to obtain some of the therapeutical treatments, and her physical inability or unwillingness to continue physical therapies. She characterizes Cline's lower back problem as degenerative changes brought about by trauma, and recommended further diagnostic testing, including a myelogram, which Cline again refused.
On May 29, 1990, the trial court rendered judgment in favor of plaintiff and against the defendants, St. Jude and its insurer, Birmingham Fire Insurance Company, awarding plaintiff temporary total disability benefits in the amount of $261.00 per week from August 29, 1987, the date of her injury, until April 17, 1990, the maximum SEB of $261.00 per week from April 17, 1990 for up to 421 weeks, and attorney's fees. Neither defendants nor plaintiff appeal the trial court's finding of temporary total disability or the amount of benefits awarded therefor.

SUPPLEMENTAL EARNINGS BENEFITS
On appeal, defendants first argue that the trial court erred in awarding plaintiff the maximum SEB, claiming that they proved the availability of work and plaintiff failed to prove that she worked or would be required to work in substantial pain.
LSA R.S. 23:1221 provides in pertinent part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * * * *
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at the time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis....
* * * * * *
(c)(ii) For the purposes of Subparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
With respect to the question of plaintiff's ability to work, the trial court found the testimony of Dr. Doyle, plaintiff's rehabilitation expert, persuasive. Dr. Doyle was, as the trial court noted, essentially the plaintiff's treating physician. She testified that plaintiff was incapable of doing any work based on her physical and emotional dysfunction from the pain she was experiencing. Plaintiff testified that she can tolerate her pain if she takes her medication but that she cannot work while on that medication because it makes her groggy. Based on the testimony of plaintiff and Dr. Doyle, the trial court determined that plaintiff could only work under extreme pain and discomfort and was, therefore, entitled to SEB without deduction for her ability to work in pain.
When there is a dispute in testimony an appellate court should not disturb the reasonable findings of the trial court unless there is no evidence to support the finding and/or the finding is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Dominique, 365 So.2d 1330 (La.1978). See also Lamette v. Morrison *716 Assurance Co., 461 So.2d 351 (La.App. 2nd Cir.1984). While several doctors testified as to plaintiff's ability to handle light-duty work, the evidence supports the trial court's finding and we cannot say the trial court was clearly wrong in making that finding.

CREDIT
The defendants next argue that the trial court erred in failing to award a complete credit for the total number of weeks of temporary total disability against the SEB obligation. The defendants base this assertion on a 1990 amendment to LSA-R.S. 23:1223 that mandates the deduction of compensation payments made for temporary total disability from SEB. LSA-R.S. 23:1223(B) now provides:
When compensation has been paid under R.S. 23:1221(1), (2), or (4), the amount of such payment shall be deducted from any compensation allowed under R.S. 23:1221(3) or Subpart C of this Part.
Prior to the 1990 amendment, the statute did not provide for such a deduction from SEB. See Nguyen v. Schwegmann Giant Supermarket, 548 So.2d 343 (La.App. 4th Cir.1989), writ denied, 551 So.2d 1337 (La. 1989). The 1990 change in the law was substantive, not procedural. Therefore, it did not have retroactive application. LSA-C.C. art. 8; Rodriguez v. Brown & Root, 410 So.2d 325 (La.App. 4th Cir.1982). See also LSA-R.S. 1:2. However, because weekly compensation benefits for temporary total disability are dependent on the disability continuing, and benefits technically become due only upon the continued existence of that disability week to week, any amounts plaintiff received for temporary total disability benefits after the effective date of the 1990 amendment to R.S. 23:1223(B) should be subject to the credit. Plaintiff received weekly compensation benefits for temporary total disability in the amount of $261.00 per week for 15 weeks after the effective date of the 1990 amendment, from January 2, 1990 to April 17, 1990. Therefore, the judgment will be amended to credit defendants for a total of $3,915.00.

PENALTIES
In her cross-appeal, plaintiff contends that the trial court erred in denying her penalties for defendants' failure to pay compensation for a period of two months in early 1990. The defendants admit that they did discontinue benefits, but contend that it was due to plaintiff's failure and refusal to provide medical documentation of her treatment and condition. The trial court, in its well-reasoned decision, addressed the issue of penalties as follows:
La.R.S. 23:1201.2 subjects an insurer to the payment of attorney's fees for the discontinuance of the compensation when it is found to be arbitrary, capricious, or without probable cause. Further, under the provisions of La.R.S. 22:658, the claimant is required to make demand for such payments as a prerequisite to penalties.
A claimant seeking penalties has the burden of proving his entitlement to such an award. If the payer of compensation has a legitimate basis for the termination or suspension of benefits, penalties are not appropriate. Willie v. Balehi Marine, Inc., [525 So.2d 231 (La.App. 1st Cir.1988)].
The only evidence at this trial as to the defendants' failure to pay monthly compensation concerns two months in early 1990. The defendants established, through the testimony of the claims adjuster, Susan Silva, that she attempted to obtain updated medical reports from either counsel for the plaintiff, or her treating physician, all to no avail. As a result, she ordered the suspension of compensation. Additionally, she arranged for medical examinations by two additional doctors, and upon receiving their reports that recommended a myelogram, she resumed payments. She also arranged for the payment of the monthly benefits which were withheld.
On this record, without proof of demand, and in view of the lengthy and protracted medical history involving numerous professional findings that Cline [plaintiff] could be released to work, this *717 court cannot conclude that the defendants' actions warrant the imposition of statutory penalties. Thus, they have been denied.
We agree with the trial court's reasoning and find no error in its denial of penalties.

ATTORNEY'S FEES
Finally, plaintiff argues that additional attorney's fees should be awarded for this appeal. Plaintiff asserts that the $4,000 for attorney's fees awarded by the trial court could not have included the time and effort expended by her attorney in defending the trial court judgment and arguing for penalties. One of the two assignments of error raised by defendants on appeal was the right to a credit on the SEB for temporary total disability benefits paid by them. Even though we found defendants were entitled to a portion of the credit claimed, plaintiff prevailed on this issue for the most part. We also found in favor of defendants and against plaintiff on the issue of penalties. Overall, we believe plaintiff is entitled to additional attorney's fees for the work expended by her attorney in defending against defendants' appeal. Therefore, we will amend the judgment of the trial court to award an additional $1,000.00 in attorney's fees.
For the foregoing reasons, we amend the judgment of the trial court to (1) give defendants a credit for $3,915.00 against their SEB obligation and, (2) increase to $5,000.00 the amount of attorney's fees awarded to plaintiff. We affirm the judgment as amended and in all other respects.
AMENDED; AFFIRMED AS AMENDED.
NOTES
[1] There is no evidence in this record, nor does counsel for the Defendants argue, that there is any connection between this surgery and the present complaints of Cline. This court does not consider the prior back complaints or surgery relevant to its determination of this matter.