892 So.2d 7 (2005)
Linda FRITH
v.
RIVERWOOD, INC.
No. 2004-C-1086.
Supreme Court of Louisiana.
January 19, 2005.
*9 Marcus Miller Zimmerman, counsel for Applicant.
Juge, Napolitano, Guilbeau, Ruli, Frieman & Whiteley, Lawrence Bernard Frieman, Metairie, counsel for Respondent.
CALOGERO, Chief Justice.
We granted certiorari in this workers' compensation case primarily to resolve a split in Louisiana's circuit courts of appeal concerning the applicability of the 1990 amendments to La.Rev.Stat. 23:1223 to claims for indemnity benefits arising from work-related accidents that occurred prior to the effective date of the amendments. The amendment in question established a credit against an employer's maximum 520-week obligation to pay an injured employee supplemental earnings benefits ("SEB") established by La.Rev.Stat. 23:1221(3), when that employer has previously paid the employee permanent total disability benefits ("PTD"), temporary total disability benefits ("TTD"), or permanent partial disability benefits ("PPD"). For the reasons explained below, we agree with the finding of the workers' compensation judge ("WCJ") that the amendments do not apply to claims for benefits arising out of work-related accidents that occurred prior to the effective date of the amendment. We therefore reverse the judgment of the court of appeal, which found that the 1990 amendments do apply to claims for SEB coming due after the effective date of the amendment.
We will also consider the plaintiff's claim that the court of appeal improperly reversed the $7,500 attorney fee award against the employer granted by the WCJ, which found that the employer's decision to terminate plaintiff's indemnity benefits was arbitrary and capricious. Because we find no manifest error in the finding of the WCJ to that effect, we reverse the court of appeal judgment and reinstate the $7,500 attorney fees awarded by the WCJ. We further amend the judgment to award Ms. Frith $3,000 attorney fees for work performed in two appellate courts.
Finally, we will address the plaintiff's claim that the lower courts improperly found that she had failed to carry her burden of proving that she was entitled to PTD. Because we agree with the finding of the lower courts that plaintiff failed to carry her burden on this issue, we affirm the lower court judgments denying her claims for PTD.

FACTS AND PROCEDURAL HISTORY
On March 17, 1989, plaintiff, Linda Frith, suffered a back injury in the course *10 and scope of her employment as a forklift operator with defendant, Riverwood, Inc. At the time of the accident, Ms. Frith was lifting a large roll of paper with a "tow motor," which is similar to a forklift, except it uses a c-clamp, rather than forks, to lift materials. Ms. Frith's injury occurred when the tow motor struck a hole in the floor of Riverwood's work facility. Although Ms. Frith initially was unable to work, she testified that she did try to return to her job at Riverwood several times during the year following the accident, but eventually had to stop working. The record indicates that Ms. Frith never sought other employment, nor did Riverwood offer to find her other employment. In the years following the accident, Ms. Frith was diagnosed with fibromyalgia and osteoarthritis, allegedly caused by the accident.
Commencing shortly after her work accident, Riverwood paid Ms. Frith weekly indemnity benefits of $267 for a total of 535 weeks, through July 17, 2000. Although the parties admit that some of those benefits were SEB, the majority were apparently TTD. According to the record, the only attempt Riverwood made to offer Ms. Frith vocational rehabilitation occurred around 1993, when it paid to send Ms. Frith to paralegal school in Oklahoma. However, Ms. Frith testified that she eventually had to discontinue her classes because her physical disabilities make it impossible for her to meet the course requirements. In 1999, Ms. Frith underwent both a cervical fusion to her neck and a lumbar fusion to her lower back required by the accident.
On June 30, 2000, Ms. Frith's neurosurgeon who performed the surgeries in 1999, Dr. James Rodgers, sent Riverwood a letter indicating that Ms. Frith had "significant permanent restrictions as far as work activities," but opining that Ms. Frith "could resume some form of work activity if these restrictions are met." Dr. Rodgers warned however that "any employer that hires her would be at risk for more problems in her low back, or with her neck." Nevertheless, Riverwood terminated Ms. Frith's benefits two weeks after Dr. Rodgers wrote the letter, on July 17, 2000, without offering Ms. Frith any additional vocational rehabilitation or otherwise evaluating her ability to find employment.
On August 30, 2000, Ms. Frith filed a claim disputing the termination of her benefits. Ms. Frith testified at a December 16, 2002, hearing, that she is unable to work, both because of her physical disabilities and because of her inability to concentrate, the latter problem caused, she contends, by medication she takes for her physical disabilities. Ms. Frith stated that she would like to return to work, if she were physically able, but that she cannot work because she is not physically able to do so. Following the hearing, the WCJ made the following findings:
1. That Ms. Frith failed to meet her burden of proving entitlement either to PTD or to TTD;
2. That Ms. Frith met her burden of proving entitlement to SEB in the amount of $267 per week commencing on July 17, 2000, and continuing in accordance with law;
3. That Riverwood was not entitled to a credit against its SEB obligation for the TTD benefts it had paid Ms. Frith;
4. That Ms. Frith had received SEB for 52 weeks from April 1998 to May 1999, and for 24 weeks from April 10, 2000, through July 17, 2000;
5. That medical treatment rendered to Ms. Frith by Dr. Manuel Calvin was compensable, except treatment solely related *11 to inflammatory arthritis, high cholesterol, and colitis;
6. That Riverwood was entitled to a credit for medical benefits paid, pursuant to La.Rev.Stat. 23:1212;
7. That Ms. Frith met her burden of proving that Riverwood was arbitrary and capricious for terminating her disability benefits, for which Ms. Frith was awarded $7,500 attorney fees;
8. That Riverwood must provide prompt rehabilitation services in accordance with applicable law at the time of the accident, and that Ms. Frith must fully cooperate with the rehabilitation effort; and
9. That Riverwood must pay legal/judicial interest and court costs consisting of the deposition cost of Helen Duke.
On appeal, a three-judge panel of the court of appeal reversed the WCJ's finding that Riverwood was not entitled to a credit against its SEB obligation for the TTD benefits it paid Ms. Frith after January 1, 1990, the effective date of the 1990 amendments to La.Rev.Stat. 23:1223, with one judge dissenting. Frith v. Riverwood, Inc., XXXX-XXXX (La.App. 1 Cir. 4/2/04), 878 So.2d 595 (Pettigrew, J., dissenting). The court of appeal also reversed the WCJ's finding that Ms. Frith was entitled to $7,500 attorney fees for Riverwood's arbitrary and capricious termination of benefits. Id. The court of appeal further rejected Ms. Frith's claim that she proved entitlement to PTD or TTD. Id. Ms. Frith sought supervisory writs, which were granted by this court. Frith v. Riverwood, Inc., XXXX-XXXX (La.7/2/04), 877 So.2d 123.

ENTITLEMENT TO CREDIT
At the time of Ms. Frith's work-related injury on March 17, 1989, La.Rev.Stat. 23:1223 provided as follows:
When compensation has been paid under R.S. 23:1221(1), (2) or (3), the amount of such payment shall be deducted from any compensation allowed under R.S. 23:1221(4) or Subpart C of this Part.
La.Rev.Stat. 23:1221(3) governs SEB, while La.Rev.Stat. 23:1221(1) governs TTD, La.Rev.Stat. 23:1221(2) governs PTD, and La.Rev.Stat. 23:1221(4) governs permanent partial disability ("PPD"). Thus, at the time of Ms. Frith's accident, the only credit allowed was credit against an employer's PPD obligation for payment of TTD, PTD, and SEB. No credits were allowed against an employer's SEB obligation to his injured employee.
However, effective January 1, 1990, La.Rev.Stat. 1223 was amended[1] to add subsection B, which provides, in pertinent part, as follows:
when compensation has been paid under R.S. 23:1221(1), (2), or (4), the amount of such payment shall be deducted from any compensation allowed under R.S. 23:1221(3) or Subpart C of this Part.
The effect of the above language was to allow employers a credit against their SEB obligations for TTD, PTD, and PPD previously paid to injured employees.
The first reported decision to consider the effect of the 1990 amendment to La.Rev.Stat. 23:1223(B), allowing a credit against SEB for other workers' compensation indemnity benefits paid to injured employees, was the Louisiana Fourth Circuit Court of Appeal's decision in Cline v. St. Jude Medical Center, Inc., 619 So.2d 712 (La.App. 4 Cir.1993). In Cline, the court *12 recognized that the amendment was substantive and therefore could not be applied retroactively. Nevertheless, the court held that "because weekly compensation benefits for [TTD] are dependent on the disability continuing, and benefits technically become due only upon the continued existence of that disability week to week, any amounts plaintiff received for [TTD] benefits after the effective date of the 1990 amendment to R.S. 23:1223(B) should be subject to the credit." Id. at 716.
This court first addressed the issue of the retroactivity of the amendments allowing a credit against SEB for other workers' compensation benefits previously paid to injured employees in Thibodeaux v. Diamond M Drilling Co., 93-2963 (La.2/25/94), 632 So.2d 736. This court held in Thibodeaux that La.Rev.Stat. 23:1223(B) should not be applied retroactively to award a credit against SEB for the TTD received by an injured employee prior to his award of SEB, stating as follows:
Because the amendment established a new credit for the employer, thereby divesting the employee of compensation, we find that the amendment constituted a substantive change in the law. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992). Accordingly, retroactive application of this amendment is impermissible and the employer has no right to a reduction of benefits because no such reduction was authorized at the time of plaintiff's injury.
Id.
Following the Thibodeaux decision, the fourth circuit again faced the question of whether the 1990 amendments provided employers a credit against SEB for indemnity benefits paid after the effective date of the amendment in Fallen v. New Orleans Police Dept., 97-0022 (La.App. 4 Cir. 7/23/97), 697 So.2d 1077. Despite this court's statements in Thibodeaux, the court of appeal followed its previous decision in Cline and rejected the injured employee's argument that Cline had been implicitly overruled by this court's decision in Thibodeaux. The court of appeal's refusal to find that Thibodeaux had overruled its Cline decision was based on the fact that no facts were included in this court's per curiam decision on Thibodeaux. The fourth circuit also applied Cline in Gardache v. City of New Orleans, 03-1286 (La.App. 4 Cir. 3/31/04), 874 So.2d 247, writ denied, 04-1047 (La.6/18/04), 876 So.2d 812.
On the other hand, the Louisiana Third Circuit Court of Appeal interpreted Thibodeaux differently from the fourth circuit. In Burge v. Louisiana Ins. Guar. Ass'n, 02-33 (La.App. 3 Cir. 5/15/02), 819 So.2d 1098, writ denied, 02-2209 (La.11/15/02), 829 So.2d 427, the court held that an employer was not entitled to a credit against SEB for workers' compensation payments paid to an employee injured prior to the effective date of La.Rev.Stat. 23:1223, even when some of the payments were made after that date. The third circuit's decision is based primarily on its recognition of the well-established general principle that "the law governing an action for benefits is the law that was in effect at the time of the injury." Id. at 3, 819 So.2d at 1100. See Bruno v. Harbert Intern. Inc., 593 So.2d 357, 360 (La.1992). The third circuit noted in Burge that the rule that the law at the time of the injury governs workers' compensation cases goes all the way back to 1917, with this court's decision in Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596 (1917). See 02-33 at 4, 819 So.2d at 1100, and cases cited therein.
In the instant case, despite its recognition of the general principle that the law
*13 in effect at the time of the injury generally governs an action for workers' compensation benefits, the court of appeal elected to follow the fourth circuit's decisions in Cline and Fallen, rather than the third circuit's decision in Burge. The first circuit found support in our Resweber opinion for its holding that Riverwood was entitled to a credit against its SEB obligation to Ms. Frith for all benefits Ms. Frith received subsequent to the effective date of the 1990 amendments to La.Rev.Stat. 23:1223(B). Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95), 660 So.2d 7.
The salient issue in Resweber was the interpretation of the two anti-fraud provisions of the workers' compensation statutes "vis-a-vis each other," specifically whether the notice provision in La.Rev.Stat. 23:1208.1 applied to fraudulent statements prohibited by La.Rev.Stat. 23:1208. Id. at 6, 660 So.2d at 12. Completely incidental to that determination, this court quoted the version of La.Rev.Stat. 23:1208 as it existed at the time of the employee's alleged false statement or misrepresentation. Id. at 3-4, 660 So.2d at 10. In footnote 1, the court explained its decision to use the version of the statute as it existed at the time of the employee's false statement, rather than the law as it existed at the time of the work-related injuries, noting that the "triggering mechanism" for determining the applicability of the anti-fraud provisions "is the making of a false statement or misrepresentation, not the occurrence of an accident or injury." Id., fn. 1.
Seeking to analogize this case to Resweber, the court of appeal here held that the "triggering mechanism" for determining the applicable version of La.Rev.Stat. 23:1223 is "the TTD benefit coming due on a weekly basis." Frith, 94-2708 at 5-6, 878 So.2d at 599, citing Cline, 619 So.2d at 716. The court of appeal concluded as follows: "because weekly compensation benefits for TTD are dependent on the disability continuing, and benefits technically become due only upon the continued existence of that disability week to week, any amounts the claimant receives for TTD after the effective date of the 1990 amendment should be subject to the credit." Id.
Our review of both the Resweber decision and the numerous cases holding that the law in effect at the time of the work-related accident governs workers' compensation cases convinces us that the court of appeal misapplied the Resweber exception to this case. The Resweber exception does not apply to this case for at least three reasons. The first, and most important, reason the Resweber exception does not apply is found in particularized purpose of the anti-fraud provisions, which are designed to shield employers from fraudulent claims, thereby protecting employees with valid workers' compensation claims. The history and purposes of the anti-fraud provisions have been explained as follows:
In enacting and amending La.R.S. 23:1208, the legislature made a policy decision that willful and deliberately false statements made specifically for the purpose of obtaining workers' compensation benefits are an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over the years to make La. R.S. 23:1208 easier to enforce and to make its penalties stronger. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits and this legislative intent cannot be ignored.
*14 Taylor v. Tommie's Gaming, 38,568, p. 6 (La.App. 2 Cir. 6/25/04), 878 So.2d 853, 858, citing Resweber. This court's decision in Resweber is correctly designed to serve the legislative purpose of penalizing employees who seek to defraud employers for the purpose of obtaining workers' compensation benefits to which they are not entitled. By protecting employers from fraudulent claims, the anti-fraud statutes actually promote the well-established purpose of the workers' compensation statutes to benefit injured employees.
A second reason the Resweber exception to the general rule does not apply to this case lies in the fact that the anti-fraud provisions at issue in Resweber govern forfeiture of benefits resulting from an affirmative fraudulent action deliberately undertaken by the claimant/employee. On the other hand, this case involves a claimant/employee who was clearly entitled to certain workers' compensation indemnity benefits at the time of her work-related injury. Those benefits included the right to as much as 520 weeks of SEB, regardless of whether the employer had previously paid other benefits. The court of appeal's decision in this case therefore divests Ms. Frith of indemnity benefits to which she is otherwise entitled, not because Ms. Frith forfeited those benefits by undertaking an affirmative fraudulent action, but simply because the legislature elected to change the law at some point after her work-related injury. In fact, the court of appeal decision in this case implicitly recognizes the fact that the Resweber exception applies only when a statute is "triggered" by "post-accident acts," then inconsistently and improperly applies the exception to a situation that does not involve a "post-accident act" on Ms. Firth's part. Seen in this light, the court of appeal decision herein clearly violates the principles underlying this court's decision in Thibodeaux.
A third reason the Resweber exception does not apply to the instant case lies in the fact that application of that rule has previously been restricted to anti-fraud cases, like Resweber and its progency, and by analogy to claims for attorney fees arising from an employer's arbitrary and capricious failure to pay benefits after amendment of the statute relative to attorney fees. See Skipper v. Acadian Oaks Hospital, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122. The two situations to which the Resweber exception has been applied have significant similarities that are not present in the situation presented by this case. Notably, both situations involve the application of post-accident amendments to statutes specifically designed by the legislature to penalize parties that attempt to thwart the well-recognized purposes of the workers' compensation statute-one penalizes an employee who commits an affirmative fraudulent act and the other penalizes an employer who arbitrarily and capriciously fails to pay benefits in a timely manner. Moreover, both situations involve post-accident acts by one of the parties to a disputed claim for workers' compensation. This case differs significantly from either of the situations where the Resweber exception has previously been applied. Despite language in footnote 1of Resweber indicating that other situations might exist in which the exception would be appropriate, the fact is the Resweber exception has been restricted to situations involving the same policy considerations that were present in Resweber. At the same time, the general rule has been broadly applied to all other types of workers' compensation cases, even after Resweber. See, e.g., Chevalier v. L.H. Bossier, Inc., 95-2075 (La.7/2/96), 676 So.2d 1072 (law at time of work-related accident determines whether claim is prescribed); and Daugherty v. Domino's *15 Pizza, 95-1394 (La.5/21/96), 674 So.2d 947 (law at time of work-related accident determines whether claimant is permanently or temporarily partially disabled).
Given these important factual and legal distinctions, we hold that the Resweber exception to the general rule that the law at the time of the work-related accident applies to workers' compensation claims, in situations involving a "triggering mechanism" that occurs after the accident, cannot be applied to divest injured employees of their right to indemnity benefits under the law at the time of the work-related accident in the absence of some affirmative act on the employee's part that results in forfeiture of the benefits. The court of appeal improperly analogized a situation in which applying a subsequent legislative act would divest an injured employee of rights to one in which an employee forfeits his rights by engaging in an affirmative fraudulent action. Accordingly, the court of appeal improperly held that Riverwood was entitled to a credit against its SEB obligation to Ms. Frith for the TTD benefits it had previously paid. This decision reverses the court of appeal decision in this case and overrules the fourth circuit's decisions in Cline, Fallen, and Gardache to the extent they are inconsistent with this decision.

ARBITRARY AND CAPRICIOUS TERMINATION OF BENEFITS
Next is the issue of the trial court's award of attorney fees of $7,500 for Riverwood's arbitrary and capricious termination of Ms. Frith's indemnity benefits and the court of appeal's reversal of that portion of the judgment. This court has held that the WCJ's determination of whether an employer or insurer should be cast with attorney fees in a workers' compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review. Authement v. Shappert Engineering, XXXX-XXXX, p. 12 (La.2/25/03), 840 So.2d 1181, 1189. The crucial issue for determining whether an employer's actions are arbitrary and capricious is whether the employer can articulate an objective reason for discontinuing benefits at the time it took the action. Williams v. Rush Masonry, Inc., 98-2271, p. 9 (La.6/29/99), 737 So.2d 41, 46.
The WCJ found that Riverwood acted arbitrarily and capriciously because, among other reasons, it terminated Ms. Frith's indemnity benefits without fulfilling its obligation to provide vocational rehabilitation services as required by La.Rev.Stat. 23:1226(A). We find no manifest error in the WCJ's holding to that effect. Thus, we find that the court of appeal improperly reversed the WCJ's attorney fee award. The $7,500 attorney fee award is therefore reinstated.
In both the court of appeal and in this court, Ms. Frith sought additional attorney fees for work performed by her attorneys in the court of appeal and this court. A workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer's unsuccessful appeal. Hickman v. Allstate Timber Co., 94-1275 (La.App. 3 Cir. 4/5/95), 653 So.2d 154, writ denied, 95-1133 (La.6/23/95), 656 So.2d 1017. Because we have ruled in Ms. Frith's favor on both the indemnity issue and the attorney fee issue, Riverwood's appeal of the WCJ's judgment was ultimately unsuccessful. Thus, we grant Ms. Frith's request for additional attorney fees and amend the judgment to award $3,000 for work done in the two appellate courts.

PERMANENT TOTAL DISABILITY BENEFITS
Finally, Ms. Frith claims that the lower courts improperly found that she *16 failed to carry her burden of proving that she is entitled to PTD[2] as a result of the March 17, 1989, work-related accident at Riverwood. In support of this argument, she claims that both the WCJ and the court of appeal failed to consider and properly weigh all the evidence, as required by this court's opinion in Comeaux v. City of Crowley, 01-0032 (La.7/3/01), 793 So.2d 1215, which held that the plaintiff's unsuccessful attempt at the rehabilitation required by La.Rev.Stat. 23:1226 is a proper factor to consider, along with his physical incapacity, in deciding his disability status. Id. at 12, 793 So.2d at 1222. According to Ms. Frith, Comeaux stands for the proposition that, because Riverwood failed to provide mandatory vocational rehabilitation, the lower courts should not have rejected her claim for PTD.
We find no merit in Ms. Frith's arguments based on Comeaux. As the lower courts found, Ms. Frith failed to carry her burden of proving entitlement to PTD by presenting clear and convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment, regardless of the nature and character of the employment. La.Rev.Stat. 23:1221(2). Accordingly, we find no manifest error in the lower courts' denial of Ms. Frith's claim for PTD.

DECREE
The portion of the court of appeal decision finding that Riverwood is entitled to a credit against its SEB obligation to Ms. Frith for TTD previously paid is reversed and the WCJ judgment on this issue is reinstated. Because we find no manifest error in the WCJ's finding that Riverwood's termination of Ms. Frith's indemnity benefits was arbitrary and capricious, the portion of the court of appeal decision reversing the attorney fee award by the WCJ is also reversed and the WCJ judgment on this issue is reinstated. The judgment is amended to award Ms. Frith $3,000 in attorney fees for appellate work. The portion of the court of appeal decision denying Ms. Frith's claim for PTD is affirmed.
REVERSED IN PART; AFFIRMED IN PART; AMENDED.
VICTORY, Justice, dissents in part for the reasons assigned by Weimer, J.
TRAYLOR, Justice, dissents in part for reasons assigned by Weimer, J.
WEIMER, Justice, concurs in part and dissents in part and assigns reasons.
WEIMER, J., concurring in part and dissenting in part.
I dissent regarding the imposition of attorney fees. As noted by the court of appeal:
Attorney fee awards in workers' compensation cases are penal in nature and imposed to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, Inc., 98-2271, p. 8 (La.6/29/99), 737 So.2d 41, 46. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Id., 98-2271 at p. 9, 737 So.2d at 46. The crucial inquiry is whether the employer can articulate an objective reason for discontinuing benefits at the time it took that action. Id.

The [workers' compensation judge] stated two reasons for assessing Riverwood with attorney fees. First, it found *17 Riverwood was arbitrary and capricious for terminating benefits before having vocational rehabilitation conduct testing to evaluate Frith's work capacity.
Vocational rehabilitation is a right of the employee. La.R.S. 23:1226(A). No evidence in the record shows that Frith specifically requested these services, although it is now clear she desires them. Riverwood articulated an objective reason for not requesting vocational rehabilitation by acknowledging that its intention was "to protect the claimant's continued receipt of disability retirement benefits from Riverwood."
Frith v. Riverwood, Inc., XXXX-XXXX, pp. 7-8 (La.App. 1 Cir. 4/2/04), 878 So.2d 595, 600-601.
Testimony at the trial indicated that Riverwood decided not to provide Ms. Frith with vocational rehabilitation because Riverwood did not want to jeopardize her receipt of disability retirement benefits which she received in addition to her workers' compensation benefits. Riverwood made an altruistic decision favoring the employee. I would not impose a penalty under these circumstances as such actions do not indicate indifference or undesirable conduct.
As the court of appeal further indicated:
Secondly, the [workers' compensation judge] found Riverwood was arbitrary and capricious for terminating Frith's benefits by relying on unsettled case law regarding the credit issue after paying benefits for over 520 weeks.
...
[O]n July 17, 2000, the date Riverwood terminated Frith's benefits, it cannot be said that the case law was unsettled because the Fourth Circuit Court had been allowing the credit since 1993, consistent with the 1995 Supreme Court opinion in Resweber [v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7], and the Third Circuit Court had not yet rendered its Burge [v. Louisiana Insurance Guaranty Association, 02-33 (La.App. 3 Cir. 5/15/02), 819 So.2d 1098, writ denied, 02-2209 (La.11/15/02), 829 So.2d 427] decision. Riverwood articulated that after paying Frith for 535 weeks, it received a letter from Frith's physician releasing her for light duty employment. Riverwood's claim agent, Helen Duke, advised them of the credit available pursuant to the statute. The [workers' compensation judge] erred in not finding that this was an objective reason for discontinuing workers' compensation benefits.
Frith, XXXX-XXXX at 8-9, 878 So.2d at 601.
Thus, on the date the decision was made to terminate benefits, the law was not unsettled. Subsequent to the termination of benefits the law became unsettled. Therefore, I agree with the court of appeal that the employer was not arbitrary and capricious and, thus, would not award attorney fees.
NOTES
[1] In addition to the amendment to allow credits against SEB as explained in the body of this opinion, the 1990 amendment to La.Rev.Stat. 1223 excepted from payment the $30,000 payment to injured employees required by La.Rev.Stat. 1221(4)(S).
[2] At the lower court levels, Ms. Frith claims that she is entitled to either PTD or TTD. However, in this court, she argues only that the lower courts should have found that she was entitled to PTD. Accordingly, we do not address TTD issue. address TTD issue.