STEPHEN K. LENTZ     *     NO. 2022-CA-0500

VERSUS     *

    COURT OF APPEAL

CITY OF NEW ORLEANS,     *
POLICE DEPARTMENT     FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 20-01273, DISTRICT "08"
HONORABLE Catrice Johnson-Reid, The Office of Workers' Compensation
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

William Roy Mustian, III
STANGA & MUSTIAN, APLC
3117 22nd Street, Suite 6
Metairie, Louisiana 70002

    COUNSEL FOR PLAINTIFF/APPELLEE

Roger A. Javier
Eric K. Buerger
Thomas F. Dixon
THE JAVIER LAW FIRM, LLC
1340 Poydras Street, Suite 2100
New Orleans, Louisiana 70112

    COUNSEL FOR DEFENDANT/APPELLANT

          **AFFIRMED**
          **December 15, 2022**

This is a workers' compensation case.  The employer, the City of New Orleans, Police Department ("City"), appeals the March 30, 2022 judgment of the workers' compensation judge ("WCJ") in favor of the claimant, Stephen K. Lentz ("Lentz").  The WCJ determined that the City improperly reduced Lentz's benefits, for which attorney's fees and penalties were assessed against the City.  For the reasons that follow, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Lentz was employed as a New Orleans police officer from 1992 until he was injured in a job-related automobile accident in November 2013.  As a result of the accident, Lentz suffered injuries to his back, neck, shoulder and knee; surgery was performed on his shoulder.  Dr. John Logan ("Dr. Logan") is Lentz's treating physician.

The injuries sustained in the accident prevented Lentz from returning to work as a police officer.  Lentz began receiving temporary total disability benefits ("TTD") pursuant to La. R.S. 23:1221 from the City and was provided vocational rehabilitation services by CorVel Corporation ("CorVel"), the City's workers' compensation carrier.  Amy Mroczkowska ("Mroczkowska") was the assigned

RLB
SCJ
RDJ

1

vocational rehabilitation counselor, working with Lentz from February to September of 2019. During that time, Mroczkowska identified six potential sedentary or light duty jobs that were presented to Dr. Logan for approval. Dr. Logan gave tentative approval for some of the jobs with the stated restrictions that the employer would need to accommodate Lentz's pain medication side effects and absences. Lentz was prescribed daily pain medications which, by his testimony, made him drowsy and tired.

After the six jobs were identified and approved by Dr. Logan in September 2019, CorVel terminated Lentz's vocational rehabilitation services. At the direction of CorVel's claims adjuster, Lori Francis ("Francis"), Lentz's TTD benefits were reduced to supplemental earnings benefits ("SEB") effective October 1, 2019.[1] In response, Lentz filed a disputed claim for compensation.

The matter was tried before the WCJ on August 4, 2021, where Lentz presented testimony. The parties stipulated that: 1) the applicable average weekly wage ("AWW") is $896.00 as reflected on the City's Notice of Modification (Form 1002) dated September 19, 2019; and 2) indemnity benefits were modified from TTD to SEB to be paid at a rate of $1,473.42 per month effective October 1, 2019. Lentz's medical records, CorVel's vocational rehabilitation file, and the deposition testimony of Lentz, Mroczkowska and Francis were introduced into evidence.

In a judgment rendered March 30, 2022, the WCJ ruled that: 1) the City improperly reduced Lentz's benefits; 2) Lentz should be reinstituted to full benefits until such time as employment is located to accommodate the conditions

---

[1] Lentz points out that both the vocational rehabilitation counselor and the workers' compensation claims adjuster were employed by CorVel, setting up an inherent conflict of interest. The City counters that this conflict of interest issue was not raised in the court below and therefore, cannot be asserted on appeal. We agree. While this potential conflict of interest may well raise a legitimate concern, we decline to address the issue in this appeal.

voiced by Dr. Logan at the last vocational rehabilitation conference;  3) the City is liable to Lentz for all past due TTD benefits in the amount of $597.33 per week based on the average weekly wage of $896.00 from October 1, 2019, subject to a credit for all benefits that have been paid since that time; and 4) the City is assessed $2,000.00 in penalties and $3,000.00 in attorney's fees for its improper reduction of benefits.

In finding that Lentz's benefits were improperly reduced, the WCJ reasoned as follows:

> It appears to the Court that while the vocational rehabilitation counselor found job opportunities for Mr. Lentz, these job opportunities were rendered useless to Mr. Lentz because he needed additional assistance in securing employment, as indicated by Dr. Lentz [sic] in a rehabilitation conference, *i.e.*, employment that would accommodate his taking medication which may have the potential of drowsiness and anticipated absences.  There was no evidence that after September, 2019 any further services were offered to Mr. Lentz. The employer has a duty to determine the employee's exact condition before terminating or reducing his benefits.  The adjuster, Lori Francis, did not further explore the labor market to accommodate the conditions placed upon perspective job opportunities by Dr. Logan.

The WCJ further determined that Lentz's trial testimony was credible.

The City filed an appeal asserting that the WCJ erred in finding that:  1) Lentz is entitled to TTD benefits from October 1, 2019, to the present; 2) Lentz's compensation benefits were improperly reduced; 3) Lentz should be re-instituted to full TTD benefits until such time as employment is located to accommodate the conditions voiced by Dr. Logan; 4) the City is liable to Lentz for all past due TTD benefits in the amount of $597.33 per week from October 1, 2019, to the present; and 5) Lentz is entitled to an award of attorney's fees and penalties.  Lentz has filed an answer, seeking additional attorney's fees for work performed on appeal.

3

**STANDARD OF REVIEW**

This Court recently reiterated the well-established standard of review in workers' compensation cases as follows:

> In workers' compensation cases, appellate courts apply the manifest error, or clearly wrong, standard of review to factual findings by the Office of Workers' Compensation. *Dean v. Southmark Construction*, 03-1051, p. 7 (La. 7/6/04), 879 So. 2d 112, 117. To reverse a trial court's factual findings under the manifest error standard, an appellate court must find that "a reasonable factual basis does not exist for the finding of the trial court" and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. and Dev.*, 617 So. 2d 880, 882 (La. 1993) (citing *Mart v. Hill*, 505 So. 2d 1120, 1127 (La. 1987)). An appellate court must evaluate "whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So. 2d at 882 (internal citations omitted). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id.* (citing *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989); *Arceneaux v. Domingue*, 365 So. 2d 1330, 1333 (La. 1978)). This standard of review acknowledges that the trial courts are more appropriately equipped to weigh the credibility of live witnesses and upholds the unique functions of the trial and appellate courts. *Stobart*, 617 So. 2d at 883 (citing *Canter v. Koehring Co.*, 283 So. 2d 716, 724 (La. 1973)).
>
> Legal errors in a workers' compensation proceeding are reviewed *de novo*. *MacFarlane v. Schneider Nat'l Bulk Carriers, Inc.*, 07-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So. 2d 185, 188 (citing *Brantley v. Delta Ridge Implement, Inc.*, 41,190, p. 8 (La. App. 2 Cir. 6/28/06), 935 So. 2d 308, 314). Questions of statutory interpretation are also subject to *de novo* review by appellate courts. *Id.* (internal citations omitted).

*Matthews v. Big Easy Janitorial, L.L.C.*, 2022-0164, pp. 5-6 (La. App. 4 Cir. 8/10/22), 346 So. 3d 325, 330-31.

**LAW AND ANALYSIS**

The City's five assignments of error set forth two issues for this Court to address. First, whether Lentz's benefits were improperly reduced from TTD to SEB, for which the City would be responsible for past due compensation, and

4

second, whether the City was arbitrary and capricious, for which penalties and attorney's fees were warranted.

***Reduction of TTD Benefits***

It is undisputed that Lentz was initially entitled to TTD benefits as a result of his work-related accident. The question before the Court in this appeal is whether those benefits were properly converted to SEB benefits in September 2019.

La. R.S. 23:1221(1)(d) provides that TTD benefits "shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required."

Additionally, La. R.S. 23:1226(A) provides:

> When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et seq.

In the present case, Mroczkowska worked as Lentz's rehabilitation counselor from February to September of 2019, meeting with Lentz on approximately seven to ten occasions, and participating in three rehabilitation conferences with Dr. Logan. During that time period, Mroczkowska identified six potential sedentary or light duty type jobs: 1) H&R Block receptionist in February 2019; 2) Tulane University registration assistant in February 2019; 3) Rooms To Go retail assistant in June 2019; 4) American Advantage customer service

5

representative in September 2019; 5) D.H. Horton receptionist in September 2019; and 6) South Star Urgent Care customer service representative in September 2019.

Dr. Logan initially approved the jobs at H&R Block, Tulane University and Rooms To Go, noting the condition that the employer would need to make accommodations for Lentz's pain medication and absences. Subsequently, at the September 16, 2019 rehabilitation conference, Dr. Logan approved the jobs at American Advantage, D.H. Horton, and South Star Urgent Care, but did not specify any conditions or special accommodations, as he had done on the previous jobs. On September 19, 2019, Lentz's benefits were converted from TTD to SEB.

The City asserts on appeal that the benefits were reduced after the September 16, 2019 rehabilitation conference because Dr. Logan "unconditionally" approved the latter three jobs, and determined that Lentz's condition had improved to the point that he was able to perform the sedentary jobs without further conditions. This is not an accurate description of Dr. Logan's findings.

To the contrary, Dr. Logan's notes from the September 2019 rehabilitation conference state that "[w]e did discuss the patient's case. He had a recent radiofrequency rhizotomy for which she [sic] obtains some relief. I note he is not been back for follow-up. *He will need continued medical management but hopefully he will be able to return to some type of gainful employment with the restrictions that we have placed*." (emphasis added).

While it is unclear why Dr. Logan failed to specify any conditions or accommodations for the last three jobs, it does not appear, as the City would argue, that Dr. Logan lifted all working restrictions for Lentz. It is evident from the

6

September 16, 2019 treatment plan that Dr. Logan continued to reference the restrictions for Lentz's employment.

Lentz's vocational rehabilitation ended abruptly in September 2019, when the last three identified jobs were approved by Dr. Logan. There was no follow-up to determine whether Lentz was offered a job. Moreover, it is clear from Mroczkowska's deposition testimony that she did not attempt to ascertain whether Lentz received any job offers. Mroczkowska initially stated that she considered her assignment to be complete because Dr. Logan approved the identified jobs and because "Lentz had a chance to apply, but he didn't." She later recanted that statement, admitting that Lentz did submit job applications. She further acknowledged that Lentz applied for one job that he found on his own. When questioned, Mroczkowska acknowledged that she did not document in her file what specific conversations she may have had with the potential employers to ascertain whether they were willing to accommodate Lentz's limitations.

Mroczkowska considered that Lentz cooperated with the vocational rehabilitation and, at times, was eager to return to work. She further confirmed that Lentz enrolled in a three-month computer course, as she suggested.

CorVel's claims adjuster, Francis, made the decision to reduce Lentz's TTD benefits based on the fact that Dr. Logan approved the identified jobs. Francis testified in her deposition that to her knowledge, none of the employers were asked if they would allow Lentz to take pain medications while working for them. Francis further explained that Lentz's monthly earning capacity was calculated at $1,672.67 based on the lowest paying job that Dr. Logan approved, *i.e.*, the H&R Block job. However, she had no information indicating whether Lentz applied for that job.

7

Dr. Logan's reports after September 2019, demonstrate that Lentz continued to complain of daily pain in his neck and back, for which Dr. Logan continued to recommend various treatments, injections, and further testing. On December 21, 2020, following a nerve root injection administered on November 2, 2020, Lentz reported to Dr. Logan complaining of neck and back pain that increased with sitting and activity. Dr. Logan opined that Lentz "is unable to return to work. He has had a FCE (Functional Capacity Evaluation) which placed him at Sedentary. At this time, with his neck, back and leg pain, and his use of narcotic meds for pain control, we do not thinl [sic] it is advisable to return to work." Furthermore, Dr. Logan stated in a March 2021 rehabilitation conference with CorVel counselor Christine Corrigan ("Corrigan") that Lentz was in need of additional vocational rehabilitation to assist him in finding employment. No additional rehabilitation services were provided to Lentz after September 2019.

Considering the record as a whole, including the credibility determinations made by the WCJ, we find no manifest error in the WCJ's finding that the City improperly modified Lentz's benefits. Because we find in favor of Lentz on this issue, we pretermit any discussion on the City's claim for overpayment of indemnity benefits. [2]

***Penalties and Attorney's Fees***

The March 30, 2022 judgment ordered the City to pay $2,000.00 in attorney's fees and $3,000.00 in penalties. The City argues that the record does not

---

[2] Although not raised as an assignment of error, the City maintains that they could have reduced Lentz's benefits on February 28, 2019, when the H&R Block job was approved by Dr. Logan, yet is did not do so until October 1, 2019. Thus, the City claims it is entitled to a credit for overpayment of indemnity benefits for those thirty weeks.

support such an award because the City reasonably controverted Lentz's claim that his benefits were improperly reduced.

With regard to the discontinuation of benefits, La. R.S. 23:1201(I) provides:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims arising under this Chapter.

"The decision to impose penalties and fees is essentially a factual issue subject to the manifest error-clearly wrong standard of review. " *Baker v Harrah's*, 2015-0229 p. 30, (La. App. 4 Cir. 3/9/16), 190 So.3d 379, 398 (citing *Authement v. Shappert Engineering*, 2002-1631, p. 12 (La. 2/25/03), 840 So.2d 1181, 1188-89).

As explained by the Louisiana Supreme Court in *Iberia Medical Center v. Ward,* 2009-2705, pp. 18-19 (La. 11/30/10), 53 So.3d 421, 433-34:

> Awards of penalties and attorneys' fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. *Williams v. Rush Masonry, Inc.*, 1998-2271 (La. 6/29/99), 737 So.2d 41, 46. Although the Worker's Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. *Id*. "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LA Cartage, Inc*., 1998-1063, p. 8-9 (La. 12/1/98), 721 So.2d 885, 890.

In deciding whether an employer acted arbitrarily and capriciously in workers' compensation matters, this Court further explained:

> Courts must evaluate "whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc*., 98-1063, p. 9 (La. 12/1/98), 721 So. 2d 885, 890.

9

> Employers must have "some valid reason or evidence upon which to base his denial of benefits." *Id*. Stated another way, employers must possess an "articulable and objective reason to deny benefits at the time it took action." *Authement*, 02-1631, p. 11, 840 So. 2d at 1188 (citing *Williams v. Rush Masonry*, Inc., 98-2271 (La. 6/29/99), 737 So. 2d 41, 46).

*Matthews*, 2022-0164, pp. 18-19, 346 So.3d at 337.

In view of these legal precepts, and upon our review of the record, we cannot conclude that the WCJ erred in awarding attorney's fees and penalties. The record demonstrates that the City failed to counter the evidence presented by Lentz and failed to provide an objective reason for reducing Lentz's indemnity benefits. Accordingly, we find that attorney's fees and penalties were warranted.

**ANSWER TO THE APPEAL**

Lentz answered this appeal, seeking an additional $2,500.00 in attorney's fees incurred by counsel in opposing the City's appeal. It is well-established that "[a] workers' compensation claimant who timely answers the appeal is entitled to increased attorney fees and penalties to reflect additional time incurred in defending against employer/insurer's unsuccessful appeal, especially where the claimant makes a clear showing of the employer's arbitrary and capricious refusal to pay the claim." *Hucke v New Orleans Glass*, 2003-1709, p. 6-7 (La. App. 4 Cir. 2/11/04), 868 So.2d 166, 170-71 (citing *Rapp v. City of New Orleans*, 1998-1714 (La. App. 4 Cir. 12/29/99), 750 So.2d 1130). Because our decision in this case denies the City relief, we grant Lentz's request and award counsel for Lentz $2,500.00 in attorney's fees for the defense of this appeal.

**CONCLUSION**

For the foregoing reasons, we affirm the March 30, 2022 judgment of the WCJ. Additionally, we award Lentz $2,500.00 in attorney's fees to cover the cost of defending the appeal.

**AFFIRMED**